### EASTMAN KODAK CO. v. ANTHONY & SCOVILL CO.

(Circuit Court, S. D. New York. June 30, 1905.)

PATENTS—INVENTION—PHOTOGRAPHIC FILM ROLL.

    The Turner patent, No. 539,713, claims 1, 2, and 3, for a photographic film roll for daylight loading of a camera, consisting of a sensitized film mounted on a strip of opaque material, having markings on the back which can be seen through a peep hole in the camera to indicate when the film is in proper position for an exposure, and also to show where the film is to be cut to separate the exposures, the whole wound upon a reel with lateral flanges, from which it is unwound in the camera as the exposures are successively made, and rewound on a receiving reel, are void for lack of patentable invention in view of the prior art, merely ordinary mechanical skill being employed to adapt well-known devices and means to the

accomplishment of a desired result, which had before been accomplished in substantially the same manner by substantially the same means, although not in precisely the same combination.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Patents, § 17.]

Suit in equity for alleged infringement of United States letters patent No. 539,713, dated May 21, 1895, application filed April 21, 1892, granted to Samuel N. Turner for "photographic film roll." Defenses: Turner not inventor; in view of prior art no patentable invention; and aggregation. Also that third claim is void for want of definiteness, and because of contradictions between it and drawings, etc. No infringement when claims construed, as they must be, in view of claims, specifications, and drawings taken together.

Philipp, Sawyer, Rice & Kennedy, for complainant.

Edward C. Davidson (Edmund Wetmore, of counsel), for defendant.

RAY, District Judge. The patent in suit contains three claims, viz.:

"(1) The herein described new article of manufacture consisting of a strip of opaque material and a continuous strip of sensitized material of a length for a series or number of photographic exposures, superimposed upon said strip of opaque material, a series of marks upon the strip of opaque material on the side opposite the sensitized strip to indicate where the strip is to be stopped for exposure and cut after exposure, said strips of sensitized material and opaque material being adapted to move in unison past an opening in a photographic camera and expose the indicating marks on the strip of opaque material, substantially as described.

"(2) The combination, with a continuous strip of photographic sensitized material of a length for a series or number of photographic plates, of a strip of opaque material superimposed thereon and having on its side opposite the sensitized strip a series of marks to indicate where the strip is to be stopped for exposure and another series of marks to indicate where the strip is to be cut after exposure, said strips of sensitized material and opaque material being adapted to move in unison past an opening in a photographic camera to expose the indicating marks on the strip of opaque material, substantially as described.

"(3) The herein described new article of manufacture consisting of a roll having at its ends laterally extending flanges, a strip of opaque material having superimposed thereon, and supported thereby, a continuous strip of sensitized material, the strip of opaque material being of greater length, and having its ends extending beyond the ends of the strip of sensitized material, said strips of opaque material and superimposed sensitized material being wound upon the roll, the strip of opaque material outermost, whereby the entrance of light to the sensitized material is effectually excluded by the opaque material and the flanged ends of the roll, substantially as described."

I am asked to find and hold that Turner, the patentee, was not the inventor. There is a mass of evidence on this subject. The complainant's brief contains 215 pages of printed matter, and defendant's 296. To give the reasons for my decision, arrived at after a perusal of the evidence and these briefs, would require an opinion, possibly, of equal length, and one which might be more confusing than satisfactory. The court, not without some hesitation, holds that Turner was the inventor. As to claims 1 and 2, the

court holds that there is no patentable invention disclosed in view
of the prior art.   In the specifications we find:

"The object of the present invention is to provide means in a photographic
camera, in which a continuous strip of sensitized sheet material is used for
the negative, so that it can be moved the right distance for the exposure of
a fresh portion of its surface conveniently and to a certainty for the taking
of another picture, and so on for each successive picture, and the invention
consists in the combination with a strip of sensitized paper or other flexible
sheet material, of a strip of flexible sheet material of an opaque nature su-
perimposed thereon, so opaque that light practically cannot penetrate through
it, having certain indicating marks on its outer side in relation to the sensitized
sheet, and a camera in which the two sheets are rolled up for use, having an
opening through which the marks on the opaque sheet can be seen from the out-
side, to indicate the movement or location of certain portions of the sensitized
sheet in relation to the lens of the camera, as hereinafter described and
claimed.

"My invention also has for its object the provision of a holder for a strip
of sensitized material which, together with the strip of opaque material upon
which the sensitized strip is superimposed serves effectually to exclude the
entrance of light to said sensitized strip so that the roll can be freely carried
about in any light without injury to the sensitized strip, and can at any time
be placed in the camera, in the field or wherever pictures are being taken,
without the necessity of using a dark room for the purpose, as in present
cameras.   *   *   *   The sensitized strip is a little shorter than the opaque
strip, and is placed on the opaque strip or superimposed thereon, so that its
film side will be outside, and so that the opaque strip will extend some dis-
tance at each end beyond the sensitized strip, one end of the film strip being
secured to the opaque strip near one end, by a piece, d, of sheet material by
paste or any suitable adhesive material, or secured thereto in any suitable
manner, the sensitized strip being of a length that will take the necessary
number of pictures, which is regulated by the amount that can be wound upon
the roll, K, when in the box.   After the strips are secured together, one end
of the opaque sheet which is the end to which the sensitized sheet is secured,
is secured in any suitable manner to the roll, K, and wound thereon, and the
roll placed in its place in the box.   The ends of the two sheets are then passed
between the guide boards, e, f, toward and over the end of the framework
of the chamber, E, and circular opening, F, and back again to the other roll,
L, to which the end of the opaque sheet is secured, as shown in Fig. 1.   *   *   *
In using the camera with the sensitized and opaque strips, the two strips are
placed together and wound upon the roll, K, so that as they travel over the
circular opening, F, the film side of the sensitized strip will face the lens
and the marked side of the opaque sheet will be face to the opening, P.   The
sheets are first moved so that the figure 1 can be seen through the opening,
P, as shown in Fig. 2.   Then the picture is taken as usual.   *   *   *   The
improved roll, as K, is constructed at each end with a laterally extending
flange, R, said flange preventing the entrance of light to the sensitized strip
at the edges, whereby, when the strip with the opaque strip on which it is
superimposed, and which is of greater length than the sensitized strip, is
wound upon the roll, the sensitized strip is effectually excluded from the effect
of light.   By the use of this invention the strips can be wound upon a roll
preparatory to inserting it in the box, and freely carried about in any light
without injury to the film strip, so that they can be placed in the camera at
any time, in the field or wherever pictures are being taken, without the
necessity of doing so, as at present, in a dark room."

Claim 1 of the patent in suit is for a new article of manufacture.
This manufacture consists of (1) a strip of opaque material; (2) a
continuous strip of sensitized material of sufficient length for a
series or number of photographic exposures; (3) this strip of sen-
sitized material is superimposed upon the strip of opaque material
This means that the sensitized material is laid upon the opaque ma-

terial, and in some manner attached thereto. So far as the claim is concerned, this sensitized material may be pasted or glued to the opaque material or sewn or pinned thereto. Any opaque material may be used. Any sensitized material suitable for taking photographs may be used. Clearly, there is no invention in superimposing the one of these materials upon the other. Proceeding with the claim, we find (4) that we are to have a series of marks upon the strip of opaque material, and on the side thereof not adjacent to the sensitized material. These marks indicate where the strip is to be stopped for exposure and where the strip is to be cut after exposure when removed from the camera and the picture is to be developed. As I understand the specifications, there are two series of numbers upon the opaque material. One set of marks comes opposite the peep hole, and when this mark is opposite the peep hole the movement of the strips of opaque and sensitized material stops until the exposure is made. The other marks indicate where the cutting is to be done as these fix the boundaries of the exposure. The claim then says (5) that these strips of sensitized material and opaque material are adapted to move in unison past the opening in a photographic camera, and expose the indicating marks above mentioned. This means, taken in connection with the drawings and specifications, that the strip of sensitized material and opaque material attached together are wound upon something, placed in the camera and unwound in such a manner that the opaque material with the marks will pass in front of the peep hole through which the operator is looking, and as one of these marks comes opposite the peep hole the operator stops the movement until the exposure is made. As the opaque material and the sensitized material are attached together either by pasting, sewing, or pinning, and are both wound upon a roll or spool of some description, and the free end, when it is desired to take a picture, is attached to another roll or spool, which being turned by means of a crank or thumb piece, not only winds the material, after the exposure, upon the new spool, but unwinds it before exposure from the spool upon which it was wound before being placed in the camera, they necessarily pass in unison before the opening of the camera known as the "peep hole," through which the operator is looking for the purpose of stopping the material at the proper point. The spool upon which the material is wound before being placed in the camera must be so placed in the camera that when the unwinding occurs the opaque material will come next the peep hole, and, the sensitized material, being on the opposite side, will come next the lens, and so take the impression. The two materials upon being attached together necessarily move in unison. The placing of the two rolls or spools, the one being the supply spool and the other the receiving spool, is a mere matter of mechanical skill. If the one is below the other must be above the peep hole. If the one is to the right the other must be to the left of the peep hole. The claim of the patent has nothing to do with the arrangement or construction of the camera. The claim relates simply to the putting or placing of a strip of opaque material upon a strip of sensitized material, or of

a strip of sensitized material upon a strip of opaque material, and this is the equivalent in every respect of pasting or stitching or pinning one piece of cloth upon another, a process of manufacture known to our great-grandmothers a hundred years ago. The making of a figure or mark upon the strip coming next the peep hole to indicate to the eye when the movement of the material should stop for the taking of an impression would occur to any one desiring some mark to indicate when the material had moved a sufficient distance for the purpose desired. I can discover no patentable invention in attaching these two strips of material together, or in attaching the two and marking the one.

Claim 2 is not for a new article of manufacture, but for the combination with a continuous strip of photographic sensitized material of sufficient length for a number of photographic plates of a strip of opaque material superimposed thereon, and having the marks mentioned in claim 1 for the purposes mentioned in claim 1. The one is superimposed upon the other, and they are attached together so that when unwound from the roll or spool they necessarily move in unison, and if the rolls or spools are properly arranged in the camera they will move in unison past the opening or peep hole, and the observer or operator will know the marks, and be able to stop the movement at the right point. Claim 1 seems to be for a new article of manufacture, while claim 2 is for a combination of elements, viz.: (1) A continuous strip of sensitized material of the length mentioned; (2) a strip of opaque material superimposed upon the sensitized material, and having marks, or a series of marks, on the outer side thereof, or the side opposite the sensitized strip. In short, the elements of claim 2 are a strip of sensitized material laid upon and attaching to a strip of opaque material and the marks upon the opaque material. Any sensitized material may be used that will take a photographic impression. Any opaque material sufficient to exclude the light may be used. Any figures or numbers or letters may be used. These indicating marks are to be placed, of course, at regular intervals. The sensitized material must be excluded from the light, and hence the necessity for the opaque material between it and the peep hole when in the camera and being unwound from the supply spool and wound upon the receiving spool. The side of the sensitized material next the lens takes care of itself, as light is excluded at all times except when the impression is to be taken.

Claim 3 goes further than claim 1 or claim 2. Claim 3 is for a new article of manufacture, which consists of (1) a roll having at its ends laterally extending flanges; (2) a strip of opaque material having superimposed thereon and supported thereby a continuous strip of sensitized material, the strip of opaque material being of greater length, and having its ends extending beyond the ends of the strip of sensitized material; (3) these strips of opaque material and superimposed sensitized material are wound upon the roll with flanges above mentioned. The claim states that by this arrangement the entrance of light to the sensitized material

is effectively excluded by the opaque material and the flanged ends of the roll. It is evident that the sensitized material must be attached to and superimposed upon the opaque material in the so-called dark room. It is also evident that when the two are joined together—that is, when the one is superimposed upon the other—they must be wound upon the spool in the so-called dark room. The opaque material is longer than the sensitized material, and hence, the two being attached together, when the sensitized material is all wound upon the spool there is still quite a length of the opaque material to be wound, and this, of course, being wound outside the sensitized material, will effectively exclude the light. It is necessary also to exclude the light from the edges of the sensitized material, and so the spool is made with flanges at each end; and, of course, it is understood that the width of the sensitized material will be such as to fill the space between the two flanges of the spool. When wound upon the spool, the sensitized material is now protected from the light at the edges by the flanges of the spool, and on the outside by the wrapping of opaque material. The sensitized material is superimposed upon or attached to the opaque material; or, in other words, the sensitized material has a backing of opaque material for use in the camera, and not as a protection from the light when not in the camera. The roll may be carried about in the light with impunity because protected at the ends by the flanges and on the surface by the wrapping of opaque material. When in the camera and passing behind the peep hole the marked strip of opaque material comes into play and serves a double purpose, viz., (1) the opaque material protects the sensitized material from the light entering the camera through the peep hole, and (2) the marks on the opaque material are plainly seen through the peep hole by the operator, and he is enabled to stop the movement of the sensitized material at proper points for making the exposures. I can discover nothing new in the flanged spool, for these spools were in use a century since. There is nothing new in winding this material upon the one spool and unwinding it when in use from the one spool to another; that is, from the supply spool to the receiving spool. It seems to me clear that, if this movement of the sensitized material superimposed upon the opaque material is to be in front of a peep hole, it would occur to any one to place a mark upon it at intervals showing when its movement was to be stopped for the purpose of making an exposure. It may be that this precise combination is not found in the prior art, but in the prior art we do find the opaque material coextensive with the sensitized material and backing the sensitized material, whereby the latter is protected while in the camera; and this is shown in an article on Capt. Barr's Dark Slide, published in Notes and Queries, April 21, 1855, at pages 311, 312. In that article we find a description of the use of a long strip of black calico as the opaque material, upon which strip of black calico there is placed a series of sheets of sensitized film, each sheet a short distance from the one next to it, and these sheets of film superimposed on the black calico are then drawn

from the supply roller upon which they are wound across the focal plane to another roll or receiving roller.   In that article we read:

"To use this dark slide, prepare your sensitive paper, say ten or twelve sheets. Have a piece of thin black calico a little longer, say twelve inches longer than your twelve sheets of paper; and upon this band of black calico place your sheets of prepared paper, leaving intervals of about two inches between each two papers, and attach the papers in any convenient manner by their upper and lower edges to the calico. Now attach the one end of the calico to the lower roller of the slide and roll it up, leaving just sufficient of it unrolled to reach the upper roller. Pass this unrolled end over the glass plate I have referred to, and then attach it to the upper roller."

It is evident that this black calico backing the sensitized paper or sheets would serve to protect it from the light coming in through the peep hole or getting to it in any way except through the lens.

In the description of Capt. Barr's Dark Slide we also read:

"As a farther precaution against light, and to guard against the evil effects of air upon the prepared paper, I leave the black calico band a foot larger than is necessary to carry all the papers, so that when all are wound round the roller the last five or six plies are plain calico, thus excluding light."

In defendant's exhibit Marey Translation, being the translation of an article written by E. J. Marey, of the French Institute, published in La Nature, No. 911, 1890, at pages 375 to 378, we find the cut or representation of a photochronographic apparatus with film ribbon. This film ribbon is wound upon a roll or spool having. flanges, and the film ribbon is represented in figure 6 as having two opaque covers—that is, at each end of the film is an opaque extension of some dark material, black calico—and when wound upon the spool the black calico or opaque cover extension at the free end covers and protects the film from the light. The edges of the film are protected from the light by the flanges of the spool. Further on in this description it is stated:

"The most important part to describe is that relating to the pellicle, to its introduction into the apparatus, and to the manner in which it is moved. Each analysis of a movement by photochronography gives rise to a long series of pictures and uses up a strip of film. It is therefore necessary for each new trial to take out the impressed strip and replace it by another. This substitution may be made in broad daylight by means of the covered spools, the description of which is as follows: To the ends of each strip of film are pasted strips of paper of the same width. One of these extensions is red, the other black. Each is about fifty centimeters in length. In the red light laboratory the ribbon thus formed is wound up on a metal spool, which it fills completely from rim to rim. After winding, the spool shows on the outside superposed layers of black paper, the opacity of which protects the sensitive film from all impression by light. Thus prepared, the supply spool may be handled in broad daylight. In order to introduce it into the apparatus, a few turns of the black cover is unwound, and the end thereof is attached to an empty spool, which is called the 'receiver,' upon which will be made a new winding of the strip as fast as it shall have passed in front of the focus of the objective lens. Pressing rollers assure the accurate winding of the successive turns of the ribbon upon the spool. When a trial is finished, the entire ribbon has passed from the supply spool, M, to the receiving spool, and the latter then shows on its exterior the red color of the covering, which in its turn will preserve the film from the action of light, and permits its removal from the apparatus without danger. Thanks to

these two different colors, it is not possible to mistake a spool which has been impressed from the one that has not."

Going again to the prior art, we find in a British patent, No. 17,-522, applied for November 4, 1889, and accepted March 29, 1890, granted to one Damoizeau for "improvements in photographic apparatus," the following:

"Two rollers or bobbins, K, K', are arranged in the back of the camera, one being the roller carrying the sensitive material or film and the other receiving the film after exposure. * * * The two rollers can hold about ten metres of paper, or enough for forty exposures or ordinary negatives, or from 8 to 10 complete panoramas. With gelatine from 25 to 30 metres and upwards can be stored up, being sufficient for from 100 to 120 ordinary negatives or about 20 complete panoramas, all in a most compact space, and not weighing more than about 300 grammes. The number of proofs which can be taken with the lengths above indicated evidently depends on the focal length or distance of the lenses employed. The ends of the sensitive material are attached to the rollers in a simple and effective manner hereinafter described facilitating this operation, which has to be performed in the dark room. * * * A case of the size of an ordinary military knapsack holds the whole apparatus, which may be carried in the hand, or by a strap over the shoulders, or on to the back. With the apparatus above described an arrangement may be provided whereby the rolls of sensitive material may be changed in full daylight. This is an important consideration, since it greatly increases the stock of sensitive film or sensitive material that can be carried, and renders it unnecessary to take the apparatus to a dark room in order to replenish the magazine. With this object, the construction of the rollers or bobbins, K, K', remains the same, but the film undergoes a slight modification, a sheet of black paper being pasted to each of its ends, of a length (say 50 centimetres) sufficient to envelope the roll of film about three times. To place a roller in position in full daylight, the camera is opened and the roller put in its usual position, a sufficient length of black paper is unrolled to allow its end to be attached to the roller on which the sensitive material is rolled after exposure. The apparatus is then closed, and the black paper is unwound until the sensitive material reaches the center of the camera which can be ascertained by looking through a small opening in the back, provided with a shutter. After the shutter has been closed, the apparatus is ready for working until the roll on the bobbin is exhausted. As the sensitive part of the roll terminates in a sheet of black paper, the sensitive part is automatically wrapped up in the black paper by the action of the apparatus after the final exposure, and thus it is possible to withdraw the roll from the inside of the camera in daylight in the same way as it was placed in position. With this arrangement, care must be taken to set the counter so that it indicates correctly the amount of sensitive material actually used, in order to avoid risk of opening the apparatus before the roll is properly covered by the black paper at the end. The above arrangement is equally applied to all photographic apparatus which employs sensitive material wound on rollers or bobbins."

As to the indicating marks upon the back of the strip of opaque material used for the purpose of showing where the sensitized material is to be stopped for exposure, and also to indicate where it is to be cut after exposure, we find this device shown in the Whitney patent, No. 446,369, dated February 10, 1891. In the specifications of that patent we find:

"J is a short strip of the perforated negative-ribbon as it may be numbered and perforated ready for use. The ribbon may be of any suitable material, however. I use and prefer transparent celluloid, and the perforations and numbers are made for ease in separating the plate when ready for developing."

In the sixth claim of that patent we find:

"(6) In a camera, the combination of case, A, colored-glass peep-hole, I, the consecutively-numbered plates, J, and the revolving cylinders, D, and D', substantially as described."

In principle there is no distinction or difference between marking the back of the film and marking the back of the opaque material upon which the film is superimposed. In any event, whether shown in the prior art or not, I can find no invention in placing marks or numbers upon the back or front of this opaque material carrying the film, and which is intended to move inside the camera in front of the peep hole, to indicate the point at which it should be stopped for the purpose of taking the impression or picture. Such a device would occur to any person possessed of ordinary intelligence. Ordinary mechanical and mathematical skill would enable a person to locate these marks. But it is apparent on inspection of the prior art that equivalent devices had been used for this very purpose. After going over the prior art with great care, I am constrained to hold that, in view of such prior art, no invention is disclosed either in claims 1, 2, or 3 of the patent.

In the third claim nothing is said of the markings, but we have added the feature of the opaque material extending beyond the film and the whole wound upon the spool. The features for excluding the light when the loaded spool is outside the camera make it a "daylight loader," so called. Wound upon the spool in this manner, it may be carried about in the light freely. I find nothing new in this; nothing new in the spool with flanges; nothing new in the numbers; nothing new in superimposing the one material upon the other; and I can find no inventive skill in the combination as shown in the patent in suit in view of the prior art. It may be true that the prior art does not show a continuous strip of sensitized material or film superimposed upon a continuous strip of opaque material, but it does show this strip of opaque material with separate pieces of sensitized plate or film superimposed thereon; and to my mind the one so readily and necessarily suggests the other that no invention can be found in the substitution of a continuous strip of sensitized material. In my view, this controversy is reduced to this: the novelty, if novelty there be, consists in the backing of a series of united plates forming a continuous film upon a continuous strip of black paper or opaque material in place of a series of slightly separated plates superimposed upon such a backing of opaque material. I find no new results from the combination amounting to invention.

The alleged invention has two objects: (1) To provide means for correctly and accurately moving and stopping a continuous strip of sensitized material so as to take successive pictures upon the same strip, and enable the operator to cut such strips after removal from the camera so as to have each picture by itself uninjured, and without mutilation; and (2) to provide a holder for the above-mentioned strip of sensitized material, which, with a strip of opaque material upon which the sensitized strip is superimposed, will

serve effectually to exclude the entrance of light to the sensitized strip both on the outside and at the ends thereof, so that the roll of sensitized material when wound upon the holder can be freely carried about in any light without injury to the sensitized strip, and be placed in the camera in the field, or wherever pictures are to be taken, without the necessity of using the dark room when the roll of sensitized material is to be placed in or taken from the camera. These objects are not new. They have been in the mind of other inventors. The means employed are not new. The same idea of means is old. Improvement has been made from time to time in the sensitized material used for taking pictures. The sensitized material now used is superior to that formerly in use. The patent is not for the improved sensitized material. The success attending the use of the spool and strips of material mentioned in the patent is due more to improved construction and the improved sensitized material used than to anything else. It is quite clear that in the claims and specifications of the patent in suit we have a more extended application of the original thought which brought into use plates of sensitized material superimposed on strips of opaque material with extended ends, so that, when rolled upon a spool with flanges, the sensitized material would be excluded from the light, making a daylight loader. But the processes described in the patent in suit show a change in the prior art in degree mainly and almost entirely, and the same thing substantially is done in substantially the same way by substantially the same means. The results are the same in substance, but perhaps better.

In the patent in suit the sensitized material is protected from the light by the same means employed in the prior art for the same purpose. I think it is true that the patent in suit shows an increased protection in the combination, but in a sense this is the result of a mere aggregation of devices well known in the prior art for accomplishing the same result. The patent in suit is the employment merely of ordinary mechanical skill to adapt well-known devices and means to the accomplishment of a desired result, which had before been accomplished in substantially the same manner by substantially the same means, although in not precisely the same combination. A combination of old elements in a new way to produce a new and beneficial result or a markedly improved result may show invention. It is difficult many times to draw the line between invention and a display of mechanical skill applied in the art, but the line must be drawn somewhere, for it is not every improved mode of doing a thing by the use of well-known means that constitutes invention. I cannot do better than to call attention to the language of the court in Hill v. Wooster, 132 U. S. 693, at page 700, 10 Sup. Ct. 228, at page 230, 33 L. Ed. 502, and to the cases there cited at page 701 of 132 U. S., page 231 of 10 Sup. Ct. (33 L. Ed. 502). In Klein v. City of Seattle, 77 Fed. 200, 23 C. C. A. 114, it was held that:

"The fact that a device has gone into general use, and displaced other devices, while in some cases high evidence of invention, is not conclusive of

patentability, and is not sufficient to support a patent, where the changes made from the prior art are mere changes of mechanical construction, or of form, size, or materials."

The result is that the defendant is entitled to a decree dismissing the bill of complaint, with costs.