## JAMES SPEAR STOVE & HEATING CO. v. KELSEY HEATING CO.

(Circuit Court of Appeals, Third Circuit. January 7, 1908.)

### No. 40.

PATENTS—INVENTION—HOT AIR FURNACE.

　　The Kelsey patent No. 476,230, for a hot air furnace, claim 5, is void for lack of patentable invention as covering merely an aggregation of old elements, each performing its old function independently of the others and producing no new result, although their aggregation in the same structure may produce an improved result.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 155 Fed. 976.

Charles Howson, for appellant.
Howard P. Denison, for appellee.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. This is an appeal by the defendant appellant from an interlocutory decree of the Circuit Court of the United States for the Eastern District of Pennsylvania. The decree comprehended the decision of the court below, that the letters patent in suit, No. 476,230, granted to W. W. Kelsey, May 31, 1892, are good and valid in law, as respects claim 5 thereof; that they are owned by the complainant; that said claim 5 had been infringed by the defendant appellant in the manufacture of two forms of furnaces, illustrated by the "Complainant's Exhibit Drawing No. 1" and the "Complainant's Exhibit Drawing No. 2," and also an order for a perpetual injunction, and the usual reference for an accounting.

Complainant appellee's patent in suit contains five claims. The first four relate to certain "improved means for obtaining a direct hot air passage from the hot air flue of the furnace to the apartment of the building to be heated," and in this improved means, the patent says the invention chiefly consists. These claims, however, are not involved in this controversy. In addition to these "improved means," in which the invention chiefly consists, the patentee says:

"And the invention also consists in an improved construction of the combustion-chamber, having air flues extending vertically through it and tie-rods extending longitudinally through said flues, and tying thereto the bottom plate and crown sheet of the combustion-chamber, said arrangement protecting the tie-rods from soot and rust and obviating obstructions in cleaning the interior of the combustion-chamber, all as hereinafter more fully described."

In this respect, the alleged invention is covered by claim 5, which is the only one with which we are here concerned. The claim is as follows:

"5. The combustion chamber C, composed of the bottom plate a, provided with the flanges, a' a', and apertures, the shell e, and flues ff, seated on said bottom plate, said flues being formed with the shoulder f', the crown-sheet g, resting on said shoulders, and the rods, l, extending through the aforesaid flues and tying thereto the aforesaid bottom plate and crown-sheet, substantially as described and shown."

Each element of the combination set forth in this claim is distinct in its character, and clearly and specifically described, and there is nothing in its structure to make it an exception to the general rule, that every part of the combination claimed is conclusively presumed to be material, so that if one of its elements is omitted, the thing claimed does not exist. This essential character of each of these elements is thus emphasized and set forth in the specifications:

"The combustion-chamber is composed of the bottom plate a, provided with apertures, from which extend the flues fff, which are mounted on said bottom plate and held in place by flanges a' a' on the plate and embracing the bases of the flues, as shown in Fig. 2 of the drawings. Upon the bottom plate is seated the shell e, which is likewise held in place by a circumferential flange a' on said plate. The flues ff are formed with shoulders f' a short distance from the upper ends thereof, and upon said shoulders rests the crown-sheet g, which is also provided with openings, through which the upper ends of the flues ff protrude. Said flues extend above the crown-sheet and terminate within the dome D, and the shell e also extends above the crown-sheet, and thereby forms upon the top of the combustion-chamber a bed b for sand, which serves to pack all the joints on the crown-sheet. The bottom plate a, and crown-sheet g are tied to the air-flues ff by means of rods, 1, which extend longitudinally through the interior of the air-flues and pass with their lower ends through ears j on the bottom plate and are provided with nuts under said ears, as shown in Fig. 2 of the drawings. The upper ends of the rods are bent outward and made to bear on the crown-sheet. Said rods are thus protected from soot and rust and obviate obstructions in cleaning the interior of the combustion-chamber."

The defenses to the suit were invalidity of the patent, for lack of invention and novelty, and noninfringement. These defenses were urged, in view of the prior art, which is abundantly illustrated in the record by former patents covering all the elements of the combination of the patent in suit, though in no one of them were all its features combined. This is clearly set forth in the opinion of the learned judge of the court below, as follows:

"It is true that the different elements of it are not new. There is no novelty for instance in a combustion-chamber made up of top and bottom plates, with an encasing shell or jacket, and vertical flues with apertures above and below, extending through it. This is to be found in the Winchester (1869), the Bonnell (1871), the Guttermann (1877), the Godley (1886), and the earlier Kelsey (1889) furnaces; in the last three of which also the flues are held in place by flanges on the bottom plate over which they fit; while in the Guttermann, the Jaques (1878), the Godley, and the Kelsey, the flues are provided with shoulders to support the top plate, these shoulders in the Jaques and the Kelsey being external and the flues protruding up through the top plate. In the Jaques also, the space between the raised edge of the top plate and the projecting ends of the flues is utilized as a bed to be packed with sand or cement so as to make gas-tight joints, a feature, which so far as it enters into the case in hand, is thus not new. Neither is there anything novel in tie-rods, fastening together upper and lower plates; which are shown in the Bryant (1847), the Tillman (1872), the Hemmich (1875), the Boynton (1876), the Guttermann, the Godley, and the Heim (1888). In all of these, moreover, they are located in hot air flues, or away from the space given up to fire and smoke; and in the Tillman also, the advantage of having them so removed and protected against the action of the products of combustion is expressly claimed. It may be that the Tillman is a somewhat different type of furnace or heater, but tie-rods are tie-rods, wherever they are, and the novelty of locating them away from the reach of fire and smoke cannot be maintained upon any such supposed distinction."

The learned judge, however, was able to find invention in the combination of these old elements. He says:

"It is said that no inventive advance is shown, and it must be confessed that it is not large. But the Patent Office, whether the Tillman patent was before it or not, has put the seal of its approval upon the invention, and it is not to be lightly set aside."

We are compelled to differ, however, from the learned judge in the conclusion thus reached. All the structures of the patents

referred to have a marked similarity to that of the patent in suit. The bed-plate and top-plate, called for in claim 5, are common to them all, and the flanges on the bottom plate, as well as the shoulders on the flues, are not uncommon; in fact, they are such well-known mechanical devices that, in structures of this kind, their presence is almost inevitable. The same may also be said of the tie-rods, extending from the bottom plate to the crown-sheet and holding and clamping the whole structure together. As a mechanical device, it was not only old, but in stove structures especially had been so long in use, and with a function so obvious, that their employment might well be taken for granted, without specification, and in fact that seems to have been the case in the first Kelsey patent, as pointed out by the counsel for the appellant. That the location of these tie-rods in the tubes, so as to be protected from the gases of combustion, was not new, is also admitted. After what was said by the learned judge of the court below, and quoted above, it is hardly necessary to discuss in detail the patents referred to, or point out the different elements of claim 5 of the patent in suit to be found therein.

The prior patent to Kelsey himself, No. 415,870, and now expired, demands our attention. The description of this structure in the specifications of the patent and the accompanying drawings, clearly show its similarity in the arrangement and function of its parts, to the structure of the patent in suit, and especially to the elements set forth in claim 5. We have here the top and bottom plate, the latter with its flanges shown in the drawings, precisely as in the patent in suit; also the air tubes, with the shoulders indicated in the drawings, though not described, supporting the top-plate or crown-sheet. In fact, as seems to be admitted by counsel for the complainant appellee, it only differs structurally from the hot air furnace of the later patent in suit, in the matter of the location of the tie-bolts. In reviewing the patents urged as anticipations by the defendant appellant, counsel for complainant appellee only says, in speaking of this former Kelsey patent:

"This is one of the patentee's earlier patents. It does not show tie-bolts within or passing through any one of the circular series of hot air flues, and does not therefore anticipate the claim sued upon."

This location of the tie-bolts seems, then, to have been the improvement on the structure of the older patent, upon which the patentee relied as *the* feature of his invention in the later patent. Tie-bolts between the bottom-plate and top-plate, or crown-sheet, had been in common use before the date of either patent, and were presumably used in this earlier patent of Kelsey. It would not be without difficulty that we could be brought to the opinion that the mere location of these tie-bolts, in and through the air tubes, though accomplishing a desirable result in protecting them from the effect of the gases of combustion, was patentable invention. However that may be, such location of these bolts was not new in the art at the date of the patent in suit, as stated by the learned

judge of the court below in that part of his opinion which we again quote. He says:

"Neither is there anything novel in tie-rods, fastening together upper and lower plates; which are shown in the Bryant (1847), the Tillman (1872), the Hemmich (1875), the Boynton (1876), the Guttermann, the Godley, and the Heim (1888). In all of these, moreover, they are located in hot air flues, or away from the space given up to fire and smoke, and in the Tillman also, the advantage of having them so removed and protected against the action of the products of combustion is expressly claimed."

In what way, however, does this location of the tie-bolts, in combination with the other elements set forth in the claim (all of them admittedly old), produce any new and useful result? The aggregation of these several old elements in one structure may have produced, and doubtless did produce, a hot air furnace that was some improvement upon the prior art, in the respect that they may have been stronger, more durable, or easier of construction. But these results were due to the function of each old element acting independently and by itself, without co-action with the other elements. A box put together with screws, mitred joints and dowel pins, may be an improvement, in appearance, strength and utility, upon one put together with nails alone, but the elements of screws, mitred joints and dowel pins is an aggregation of elements, each contributing its own function and not a patentable combination. No new and useful result, in the sense of the patent law, was achieved or claimed by the combination or aggregation of the elements described in claim 5. The mode of distribution of heat was not modified or changed, and neither its quantity nor quality was affected at all by this combination of old elements. The most that could be claimed is that the structure was more enduring, more easily and securely put together, because the tie-rods which were performing the same function of clamping together the top and bottom plates were protected from deterioration by being located within the tubes, and the shoulders on the tubes made a convenient and sufficient support for the top-plate, and the flanges on the bottom plate serve to hold securely the bottom of the tubes in place, and the projection of the tubes through the top-plate serve to hold the sand around the joints. Each of these elements contributed its own function and attribute, which was in nowise dependent upon the others, or affected thereby. We are compelled, therefore, to think that claim 5 set forth a mere aggregation of old elements, and not a new combination involving patentable invention.

The decree of the Circuit Court is therefore reversed, with instructions to take such further proceedings as are not inconsistent with this opinion.