ELLIOTT-FISHER CO. v. DONNING et al.

(Circuit Court, S. D. New York. May 10, 1909.)

No. 8,932.

1. PATENTS (§ 328*)—VALIDITY—INFRINGEMENT—BOOK TYPEWRITERS.
The Hatch & Hillard patent, No. 620,125, for improvements in book typewriters, was not anticipated, and discloses invention. While not of a pioneer character, it covers a meritorious improvement in the art, and is entitled to be given a corresponding scope and a reasonable range of equivalents. As so construed, *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

2. PATENTS (§ 328*)—INVENTION—BOOK TYPEWRITERS.
The Halle patent, No. 621,660, for mechanism relating to book typewriters, claims 1, 4; 5, 7, 9, 19, and 64 are void for lack of patentable invention.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

**3.** PATENTS (§ 328*)—INFRINGEMENT—BOOK TYPEWRITERS.

The Fisher & Laganke patent, No. 632,681, for means for supporting the platen of book typewriters, conceding its validity, must be given a narrow construction, and as so construed *held* not infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

**4.** PATENTS (§ 328*)—INFRINGEMENT—BOOK TYPEWRITERS.

The Fisher patent. No. 632,680, for a book and machine support for book typewriters, construed, and *held* not infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

**5.** PATENTS (§ 112*)—SUIT FOR INFRINGEMENT—DEFENSES—SCOPE OF DECISION OF PATENT OFFICE.

The defeated party in an interference proceeding in the Patent Office is not estopped to contest the validity of the patent granted to the successful party when sued for its infringement, although he took no appeal, and did not raise the question of patentability in such proceeding.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. § 112.*]

**6.** PATENTS (§ 26*)—INVENTION—"COMBINATION OF OLD ELEMENTS."

To constitute a patentable combination of old elements, they must cooperatively perform a different function from what they did before, unless it is shown that, in the combination as applied to a machine or device in its entirety, a new and useful result is produced.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

**7.** PATENTS (§ 328*)—INVENTION—BOOK TYPEWRITERS.

The Elliott patent. No. 665,774, for a book support for book typewriters. is void as for a mere aggregation of old elements, each of which performs its old function and without producing any new result.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

**8.** PATENTS (§ 328*)—ANTICIPATION—BOOK TYPEWRITERS.

The Smith patent, No. 669,355, for clamps for holding the typewriting work down on the platen in book typewriters, is void for anticipation.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

**9.** PATENTS (§ 328*)—INFRINGEMENT—WORK GAGE FOR BOOK TYPEWRITERS.

The Halle patent, No. 705,527, for a work gage attachment for book typewriters, *held* valid and infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Robert Fletcher Rogers, for complainant.

Griggs, Baldwin & Baldwin (Dyrenforth & Parry, of counsel), for defendants.

HAZEL, District Judge. This action is for the infringement of the following letters patent No. 620,125, dated February 28, 1899 (application filed June 16, 1898), to Hatch & Hillard for improvements in typewriters; No. 632,680, dated September 5, 1899, to Fisher, for book and machine support; No. 632,681, dated September 5, 1899, to Fisher & Laganke, for book supporting table with means for tracks; No. 621,660, dated March 21, 1899, to Halle, for machine rest; No. 665,774, dated January 8, 1901, to Elliott, for book support; No. 669,-355, dated March 5, 1901, to Smith, for paper confining means; and No. 705,527, dated July 22, 1902, to Halle, for work gage attachment. The specifications and claims of the enumerated patents disclose that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

they relate to mounting typewriting mechanism used principally for writing on pages of bound books, a suitable supporting frame, a flat plate or platen, a base or track frame, and their manner of adjustment. The history of the art indicates that the inventions were not of a pioneeer character, but consisted merely of additions and improvements in book typewriters.

In the Hatch & Hillard patent, No. 620,125, claims 11, 12, and 13 are involved. Claim 11 reads: ' ' ' ' ' ' ' ' ' ' '

"The combination of a base-frame, a platen, and a supporting-frame to which one end of the base-frame and one end of the platen are each attached by a pivoting connection, substantially as described."

Claim 12 specifies a base-frame overlying the platen, and claim 13 states that the base-frame and the platen are each independently attached to the supporting-frame. According to the specification:

"The invention consists in an adjustable supporting-frame, called the 'adjusting-frame' or the 'supporting-frame,' which supports one end of the platen and base-frame of the machine, and in the manner in which the platen and base-frame are attached to the adjusting-frame."

The typewriter has a table upon which the book is placed. The printing mechanism moves laterally to enable suitable spacing between the letters, words, and lines. The plate or platen rests on the book which is supported by suitable contrivance between the table and printing mechanism; each element being so supported as to conveniently control the book during the printing operation. The specified means are for easily moving and replacing the platen and printing mechanism in order to adjust the book and facilitate writing upon its pages. The defenses are lack of novelty and that the claims are limited to an adjustable supporting-frame. It appears from the many prior patents in the record that it was old to use a flat platen for book typewriting, and it was also old to use for a machine support a base-frame resting upon an open book. Moreover, it was common to mount the machine on the base-frame adapted to lateral movement to provide letter and line spacing. In the prior art, however, it was necessary to move either the book support or writing mechanism to get the alignment of line and letter spacing, and the work of the operator was retarded and hindered since it was frequently necessary to readjust or move the flat platen and the book and supporting-frame as the writing progressed. The patentee was the first to conceive the idea of replacing the movable flat platen with one that was normally stationary and adapting it to a practical movable typewriting machine which could be successfully operated. Why, then, should not his invention receive a proper share of appreciation and the protection of the statutes? Reading the specification with the claims would seem to indicate that the patentee did not limit the claim to the feature of adjustability of the supporting-frame. Such a limitation was not essential to the accomplishment of his object. Indeed, the specification points out that the invention is not exclusively for the adjustable-frame, but also for the manner in which the platen and base-frame are pivoted or attached thereon. It seems to me that the patentee has complied with the provisions of section 4888 of the Revised Statutes (U. S. Comp. St. 1901, p. 3383), requiring him

to "particularly point out and distinctly claim, the part, improvement or combination which he claims, as his invention or discovery." That a stationary flat platen pivoted for vertical adjustment in connection with the movable writing machine was an improvement and made the book typewriter practicable 'is not seriously controverted. True, the elements of the claims are not new, but their correlation in a new way produces a new and useful result. They were not an aggregation, but a "true combination." National Cash Register Co. v. American Cash Register Co., 53 Fed. 367, 3 C. C. A. 559. To provide means for holding the flat platen rigidly in position as the work progressed and lifting it from the printing area and enable the base-frame to guide the writing in its lateral movements, and to secure the required spacing between lines and letters by bringing the elements in accurate operative relation, undoubtedly required a fair degree of the inventive faculty notwithstanding the information and knowledge possessed by the skilled in the manufacture of the common typewriter. It may seem to have been a very small achievement, but it was of such consequence in the then state of the art that not a little of the success attained by the book typewriters is due to it. Defendants claim that the claims under consideration lack novelty because of the prior patents to Halle, No. 621,660, of March 21, 1899 (application filed June 13, 1898), and to Elliott & Hatch, British patent No. 19,002, of 1897, application dated August 17, 1897. Such inventions, however, assuming that they cover and include the claims in suit, are proven by the stipulation of the defendants found in the record to have been later than the patented invention in controversy. The proofs are that on July 2, 1897, the patentee manufactured a machine (No. 536 in evidence) complete in every particular, and embodying the supporting-frame and the platen and base-frame pivotally mounted thereon as described in the specification. This testimony is not controverted. Therefore the patents cited by the defendant as anticipatory were anticipated by the invention in suit. Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139; Westinghouse Electric & Mfg. Co. v. Saranac Lake Elect. Co. (C. C.) 108 Fed. 221. The said stipulation was enough to put upon the defendants the burden of establishing that the asserted prior inventions were made earlier than the invention in controversy. As no such proof was offered, it is unnecessary to enter upon a discussion of such prior publications. There is no material difference between defendants' typewriting machine and that of the complainant in so far as the involved claims are concerned. The defendants' base-frame does not overlie the platen, but such alteration or method of clamping the paper or sheet was not a departure from complainant's method of holding down the page of the book. In the Hatch & Hillard patent the paper is retained on the platen by the overlying base-frame, while in defendants' device the base-frame does not overlie the platen but lies without the plane of the platen; the paper being held down by lateral clamping devices and the platen being retained in position by a separate device. The Hatch & Hillard invention, as has been stated, is not of a pioneer character, but it has meritoriously improved the art. The claims should be given corresponding scope and a reasonable range of equivalents (Cimiotti Unhairing Co. v. American Fur Co., 198 U. S. 399,

25 Sup. Ct. 697, 49 L. Ed. 1100), and, as thus construed, defendants' construction infringes the claims in suit.

The patent to Halle, No. 621,660. The object of the patentee was to devise a method of moving the writing mechanism positioned on the platen off and away from the operative area or printing field without raising or otherwise moving the machine "except parallel with the printing surface," and, after adjustment of the book or paper, to return the machine to its position for printing. In the prior art the writing mechanism was either lifted from the track rails to enable adjustment of the book or in cases where the tracks were pivotally mounted by raising the machine and rails to a vertical position. The involved claims are 1, 4, 5, 7, 9, 19, and 64. They are not believed to be essentially different from each other. The substance of claim 1 includes two so-called members (rails) within and without the printing area; the outside member being displaceable when the machine is moved on the rail within the printing field. Claim 19 covers a rest outside of the printing field to hold the machine and a platen susceptible of being moved independently of the rest. Claim 64 is for a rest member outside of the printing field to receive, the machine when not in use and for the required means to move the machine from the writing field to the outside thereof. It was a contentious point as to whether the term "writing area," as used in the specification, means the space between the supporting strips wherein is located the tracks upon which the machine moves or only the space within which the actual printing occurs, but it will not be necessary to decide this point, for in my estimation the prior state of the art was such at the date of the Halle patent that to provide a position of rest for the machine outside the printing area was not a patentable discovery. To paraphrase the rule stated in Johnson Co. v. Toledo Traction Co., 119 Fed. 885, 56 C. C. A. 415, it was an old device adapted to a new use without any change in the manner of application and without any result substantially distinct in its nature.

In the patent to Marks, No. 361,431, for transferring patterns, a rigid rest is provided at the rear of the table used for making impressions with a roller having guide wheels to enable traveling from the table to the position of rest at the end thereof. True, this was not in an analogous art, but, as the positions of rest practically performed the same function and for a similar purpose as the element in suit without substantial change to so adapt it, the said prior patent is not entirely inapt. The principle finds support in many cases. Mann's Boudoir Co. v. Monarch Co. (C. C.) 34 Fed. 130; Jones v. Cyphers (C. C.) 115 Fed. 325, and cases cited. Moving either the work or the machine away from the writing area is also present in the typewriting patents to Cash and Young. In these patents the work was moved outside the printing field and away from the writing mechanism, while in the patent in suit the machine travels to the rear of the table and away from the work. In the patent to Hopkins, No. 613,209, for book typewriting, the machine has rails extending back beyond the printing field. It is true, as contended by complainant, the extension of the rails will not permit moving the machine outside the printing area to permit adjustment of the work without raising the machine, but nevertheless the

position of rest for the machine is thought to be suggested. Halle extended his sectional rails further beyond the printing area than Hopkins to enable placing the entire machine thereon, and thus supply a position of rest outside the printing area. This accomplishment was an obvious improvement on the antecedent devices, but it suggested itself to the ordinary workman, and does not rise to the dignity of invention.

Claim 19, in view of what has been said in relation to the claims already discussed, is thought fairly anticipated by the British patent to Elliott & Hatch, No. 19,002, and to Crary, No. 477,353. In the Crary patent is shown a writing mechanism supported by a base-frame overlying the paper and platen, the writing machine being movable to the side to clear the book or writing, thus occupying a position of rest. It is true the platen does not swing vertically and the base-frame cannot be lifted, but raising or swinging the platen is not emphasized in claim 19. However, the British patent to Elliott & Hatch plainly indicates means for swinging the platen and clamping frame. The involved claims are invalid for want of patentable invention, and therefore are not infringed by the defendants.

Fisher and Laganke patent, No. 632,681. This patent relates to means for supporting the platen; the object of the patentee being to bring the writing mechanism and book or page in co-operative relation. The description of the invention shows that the table upon which the machine stands has separate supporting strips raised above the surface of the table for placing the book between them. The platen which spans the strips is pivoted at one end to enable proper adjustment of the page of the book. According to the drawings and specification, the supporting strips may be raised or lowered, by suitable worm shaft, the worms meshing with gears for "retarding said strips at the desired adjustment without the use of auxiliary locking devices." The evidence shows that this operation of the supporting strips enables instant and convenient adjustment to heights demanded by the size of the book used. As to whether the involved claims, 8, 9, and 13, are patentably novel in view of the Fisher patent, No. 632,680, which is for a vertically adjustable book support underneath the plane of the patent, is extremely doubtful, but, assuming invention, the claims must be given a strict construction, and, thus construed, the defendants are not thought to infringe. In their machine there are no supporting strips, both the platen and track frame being supported by front and rear castings. Moreover, in defendants' machine the book is necessarily raised to the platen, and by the vertically adjustable book support positioned between the front and rear sides of the table and the platen at all times remaining stationary. In the patent in suit the platen is supported by the strips, and, when the strips are raised or lowered, the platen and rails are moved with them. The difference in construction between the defendants' mode of operation and that of complainant is distinctly different, and accordingly the alleged infringement is not sustained.

Patent to Fisher, No. 632,680. This patent relates to means for raising or lowering the book toward a normally stationary platen so as to press or adjust the book thereto. In the preferred structure there are two platens positioned on the typewriting table each capable of separate movement to place upon them the pages of the book for writing; the

book itself being supported underneath the platens, the leaves passing upward through the edges of the adjacent platens and lying thereunder. Means are provided for adjusting the book support which enables moving the book in proper position and in corresponding relation to the platen.

Claims 1 and 3 are involved. Claim 1 reads:

"1. A typewriting machine having a normally stationary platen, a vertically adjustable book support disposed below the plane of the platen, and having a continuous book-receiving surface, whereby an open book may be elevated throughout its extent toward the plane of the platen, and means for securing the book support at the desired adjustment, substantially as specified."

Claim 3 is substantially similar save that reference is made to the adjusting feature. The defenses are that the claims are invalid for lack of novelty and noninfringement. The prior Fisher patent, No. 569,625, describes a book support consisting of two independently adjustable members for raising the book to the plane of the platen; the only perceivable difference being that in the patent in suit means are provided for raising the entire book to the lower surface of the platen. In the Crary patent cited by defendants as anticipatory is shown a support or frame which apparently does not act on the entire book, while in the Fisher patent in suit there is present the feature of a continuous book receiving surface, which is emphasized to achieve the elevation of the book in its entirety "throughout the plane of the platen." In view of the earlier Fisher and Crary patents, the claims must be limited to a continuous book receiving surface and to the construction for the adjusting mechanism, essential elements of the claims.

The defendants do not employ a continuous surface book support. Their book support has two platforms which serve as a rest or support for the covers of the book. This feature was old and is shown in the patents to Young, Fisher, Elliott, Crary, and Hopkins. Defendants' feature of raising the book to the under side of the platen is also found in the prior art. For example, in the patent to Remley, No. 385,008, there is a vertically adjustable platform which may be elevated and lowered by suitable device to enable closely holding the paper in position for writing. In the Leverich patent, No. 12,954, an open book is supported on separate platforms; both being capable of raising and lowering the entire book, and they may be moved separately. In the Hopkins patent there is a separate book support consisting of platforms which may be lifted together or separately. It seems to me clear that the defendants in lowering and raising their book support have adapted a book support and means for adjusting which were old and commonly understood in the art, and therefore do not infringe the claims in controversy.

The Elliott patent, No. 665,774, was in interference with an application filed by the inventor of defendants' machine, and was decided adversely to him, but such decision is not the equivalent of an adjudication as to patentability and infringement (Hildreth v. Norton, 159 Fed. 428, 86 C. C. A. 408), and the defendants are not precluded in this action to challenge the validity of the patent as a true combination, even though no appeal was taken from the decision of the Commissioner of Patents or the patentee failed to comply with the rules of the

Patent Office to file a demurrer which would have presented for decision the question of patentability of the claims. Automatic Racking Mach. Co. v. White Racker Co. (C. C.) 145 Fed. 643. The Elliott machine concededly embodies the general arrangement of the Hatch & Hillard patent, No. 620,125, hereinbefore considered and held to be infringed by the defendants' machine. The involved claims 1, 2, 3, 4, and 5 point out that the elements are in combination with a normally stationary plate or platen and normally stationary book support which is movable laterally underneath the platen and consisting of two vertically depressible elevations or boards. Such boards or supports are attached to the table in such manner as to hold both sides of the book in writing; the object being to bring one side of the book in correct alignment with the platen, and turning the page to allow it to rest on the platen during the printing operation. The feature by which the book support moves from one side of the table to the other and its separation into two vertically depressible book supports is admittedly the new element of the claims which are for a combination of elements well known in the art. Indeed, the main difference between the prior Hatch & Hillard patent and the patent in suit is that in the former the supporting frame is vertically adjustable and the base-frame is arranged for moving on the plate from one side to the other. I do not doubt that in defendants' machine are embodied the various elements of the claims in controversy, but it is a question whether such combination claims are not void as being for old elements without performing any new functions or carrying out any new method of operation. To escape being a mere aggregation, the elements of the combination must co-operatively perform a different function from what they did before, unless it is shown that in the combination as applied to a machine or device in its entirety a new and useful result is produced. Bullock Elec. Mfg. Co. v. General Electric Co., 149 Fed. 409, 79 C. C. A. 229; Goodyear Tire Co. v. Rubber Tire Co., 116 Fed. 363, 53 C. C. A. 583; Spear Stove & Heating Co. v. Kelsey Co., 158 Fed. 622, 85 C. C. A. 444; American Saddle Co. v. Sager Gear Co. (C. C.) 122 Fed. 645; Johnson v. Foos Mfg. Co., 141 Fed. 73, 72 C. C. A. 105.

As applied to claim 1, the proofs show that in the patent to Hatch & Hillard is found a platen and base-frame pivoted to the supporting frame. That the base-frame is not movable laterally is not thought material. In the patent to Harriman, No. 242,309, are found divided platforms adapted to be raised and also for the purpose of adjusting the book. It has also a movable carriage, together with supporting members mounted and guided to conveniently write on different sides of the book. In the patent to Leverich is shown a longitudinal depression and a movable carriage which has provided rising and falling book supporting leaves for upholding the sides of the book. In the patent to Crary hereinbefore mentioned is shown a table having upon it a typewriting machine and a flat platen to suitably hold the leaf of the book during the writing process. Such patent also has a base-frame mounted to be tilted away from the platen and in relation thereto. As to claim 2, the platen and base frame is shown in the Halle patent hereinbefore considered. Leverich also illustrates a book sup-

port with leaves that are adapted to rise and fall; the support being adapted to shift laterally.

Enough has been said to indicate the functional operation of the different elements in the apparatuses of the prior art. The combination of the claims doubtless is new, but it is not apparent that any new result is attained thereby. The parts or elements here perform the same function as in the structures from which they were taken and without the accomplishment of any original result. A more convenient or salable structure probably is produced by the adaptation of the means described in the specification, but this was not sufficient, for it has been frequently held that:

"The adaptation of well-known devices and means to the accomplishment of the desired result which had been before accomplished in substantially the same manner by substantially the same means, although not in precisely the same combination, amounts to no more than mechanical skill." Eastman Kodak Co. v. Anthony & Scovill Co. (C. C.) 139 Fed. 36.

Hence the patent under consideration, being for mere aggregation, is void.

The Smith patent, No. 669,355, covers clamps or lips for holding the typewriting work down on the platen. The clamps or lips in the specific form of construction are fixed to the track rails which when raised release the paper. The sole feature of novelty is the use of the clamping device in connection with the rails or base-frame, so that upon lifting the latter the clamping device performs its function. The defendants' clamping device consists of a series of small plates attached lengthwise to the rails, and when in operative position, overlie the platen. Defendants' clamps or grippers are operated by spring arrangement located above the front end of the platen, and, when the spring is manipulated, the grippers or clamping devices drop down against the platen or paper. I think the prior art which is invoked by the defendants to invalidate the claims in controversy substantially discloses the combination in suit. The patentee claims that he achieves a beneficial result by releasing the clips on merely lifting the base-frame, and that by such operation it is unnecessary to raise the printing mechanism any appreciable distance in order to adjust the paper on the platen. But in my estimation no inventive skill was exercised in adapting a clamping device in the manner specified in the claims. Certainly the patent to Veith anticipates, for there is shown a yielding lip attached to the upper end of the base-frame which normally rests on each side of the platen, and does not overlie it as in complainant's patent. That it does not rest on the platen is an immaterial distinction, inasmuch as it substantially performs the precise function of the claims in issue. Other anticipatory patents are cited in defendants' brief; but it is unnecessary to discuss them.

The patent to Halle, No. 705,527, is for a work gage consisting of studs and ribs located outside of the base-frame and the platen. The proofs show that, when the base-frame is raised, the paper or page is placed on the platen and held by the work gage, and, when the base-frame resumes its ordinary position, it rests on the paper and clamps it. Claim 7 reads as follows:

"7. In a typewriting machine, the combination with the platen, and the rails or guides for the traveling printing mechanism, of a work-gage having a support distinct from the platen and arranged to lie outside of the vertical plane of a rail or guide."

The combination of a platen, base and frame, and work gage which performs its functions outside and irrespective of the platen, was new and novel. Although a very simple device its value and usefulness in machines of this description are thought to have advanced the art in a modest way. The arrangement of the pins alongside the edge of the platen and the bar with its projection or gage concededly help to keep in position the paper during the progress of printing. The defendants, in connection with their printing machine, use a work gage which is supported by a series of clamps connected to the rails or base-frame. The work gage consisting of aligning pins located on the under side of the clamps has a support inside of the rail and is interposed between the rail and the platen, extending parallel thereto. The contention that defendant does not infringe because its work gage is positioned inside of the track rails is immaterial, and, even construing the claims narrowly, its device is fairly covered and included by complainant's patent. The same results are achieved by defendants by the use of equivalent means. Their gage device aligns the work upon the platen, and holds it in proper position for printing. I have examined the patents to Cash and Cohn, but in my judgment they do not anticipate the claim.

It follows that claims 11, 12, and 13 of patent No. 620,125, to Hatch & Hillard, and claim 7 of patent No. 705,527, to Halle, are valid and infringed by the defendant; that the patents No. 632,681, to Fisher & Laganke, and No. 632,680 to Fisher, as construed by the court, are not infringed by the defendants; that patents No. 621,660, to Halle, No. 665,774, to Elliott, and to Smith, No. 669,355, are invalid. Appropriate decrees may be entered, but without costs to either party.