### L. A. THOMPSON SCENIC RY. CO. v. CHESTNUT HILL CASINO CO., Limited, et al.

(Circuit Court of Appeals, Third Circuit. January 28, 1904.)

#### No. 11.

1. PATENTS—PATENTABLE INVENTION—COMBINATION OF OLD ELEMENTS.

While it may not be possible to formulate a definition of a patentable combination of old elements which will in all cases distinguish it from a mere aggregation of the results of the several elements of which it is constituted, it may be said that the effect produced by the combination must be new and useful, and not such as would suggest itself to the mind of an ordinarily intelligent person, experienced in the art to which the supposed invention relates.

2. SAME—PLEASURE RAILWAYS.

The Hinkle patent, No. 307,942, claim 1, for "a gravity tramway having a convoluted return curved track crossing itself, substantially as described, and for the purpose set forth," which is to economize space by means of the convoluted crossing track, is void for lack of patentable invention; also *held* not infringed, even if valid.

**3. SAME.**

> The Thompson patent, No. 367,252, claim 5, for an elevated gravity and cable railway, in combination with a car provided with an automatic gripping device, and a cable and motive power, is void for lack of invention; being merely for an aggregation of old devices, producing no new result by their coaction.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 119 Fed. 359.

Frank S. Busser and George J. Harding, for appellant.

Joseph C. Fraley, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the decree of the United States Circuit Court for the Eastern District of Pennsylvania, in the suit of the L. A. Thompson Scenic Railway Company v. Chestnut Hill Casino Railway Company and James A. Griffith, for an alleged infringement of two patents, namely, the Hinkle patent, No. 307,942, and the Thompson patent, No. 367,252. The complainant-appellant was the owner of both patents. The former of these patents contains three claims, the latter, ten, and the bill of complaint simply alleged infringement generally, without specifying any particular claims. At the conclusion of the testimony, however, counsel for complainant stated that he would ask only for a decree upon claim 1 of the Hinkle patent, and claim 5 of the Thompson patent. Both patents relate to what are called "gravity pleasure roads."

The Hinkle patent, No. 307,942, explains in its specifications the invention covered by it, as follows:

> "My invention relates to gravity pleasure roads having cars which run on tracks, the cars returning by gravity and momentum to their starting point, and has for its object to increase the distance of possible travel of the cars within the necessarily circumscribed space in which such structures are built, and also to enable an audience to observe the operation of the cars with facility and comfort. My invention consists of a continuous convoluted track passing through two or more ellipses in traversing the space within which the track is contained. My invention further consists in a central revolving auditorium within the gravity road or track, whereby the passengers can be continuously observed by the audience."

The first of the three claims is the only one which is charged to be infringed, and is as follows:

> "(1) A gravity tramway having a convoluted return curved track crossing itself, substantially as described, for the purpose set forth."

In the specifications, the patentee says:

> "I am aware that it is not broadly new to construct a gravity pleasure tramway in a circle and with alternate depressions and eminences for a car to pass over."

Whatever is claimed, therefore, as new in this first claim, must be covered by the words, a "convoluted return curved track crossing itself." The purpose of this convolution of the curved track is obvious. As set forth in the specifications, it is, that within the neces-

sarily circumscribed spaces which can be devoted to these pleasure gravity roads, the duplication of a circular or partially, circular track upon itself, enables a ride to be given as long as could be given in twice the space where there was no "convoluted return curved track crossing itself." The specifications and drawings call for two circular, or nearly circular, tracks, as the result of the convolution, with space for an "audience pavilion" in the center, from which the moving cars on the gravity road can be seen, during their whole course around both convolutions.

The defendant's structure is not circular in form, but elongated, so that for the greater part of the distance, the undulating tracks run in directions parallel and close to each other, widening somewhat at the return curves. The "convoluted return curved track crossing itself," is, in its essential form, illustrated by a cord fastened together at the ends, held in either circular or nearly circular form, or elongated, as the circle can be by placing the hands on opposite sides of the periphery, and pulling them in opposite directions until there are two sides straight and parallel, curving at the ends around the fingers, which stretch and elongate the circle. If, in either position, a half turn is made, bringing one side upon the other at the middle of the circle or of the elongated figure, and one half is folded or turned back over and upon the other, we have a convoluted figure, whose periphery crosses itself precisely as do the tracks in the patent in suit. The tracks of the patent in suit undulate to produce the ascents and descents by which gravity and momentum are brought into play, and at the crossing place, the one is lowered below the other, so that cars may pass and repass without obstructing each other.

It was not new in the art of constructing gravity pleasure roads, to go round and round within the same space upon tracks coinciding in their general direction, and running alongside of each other, where the car was shifted by a switch or other device from one track to the other. The continuous ride provided by the simple crossing of one convolution over another at a different grade, did not, in our opinion, involve invention, and we think the court below was right in so deciding.

The German patent, No. 11,453, dated March 4, 1880, as shown in the record, gives us a return track in the form of the figure 8. At the place where the tracks cross themselves, one is raised so far above the other as to permit cars to pass over and under each other, thus making an endless unobstructed return track. If one loop of the figure 8 is turned over upon the other, we have a convoluted return track, that is the "gravity tramway having a convoluted return curved track crossing itself, substantially as described, for the purpose set forth," of the first claim of the Hinkle patent.

We think the court below was also right in the view that, even if the claim stated were valid, there was no infringement, since the specifications referred to by the language of the claim, call for a continuous convoluted track passing through two or more ellipses, and the accompanying drawings and descriptions show ellipses nearly circular in form, and which permit a central revolving observation platform or pavilion, the specifications stating one of the objects of the invention to be, "to

enable an audience to observe the operation of the cars with facility and comfort." No such arrangement is possible with the tracks of the alleged infringing railway, which are straight and parallel and close together, except at the ends where short curves are necessary to make a return.

The invention of the Thompson patent, No. 367,252, is thus described in the specifications:

"My invention consists, first, in providing an elevated railway of simple construction, while at the same time strong and durable, suitable for conveying cars or coaches by gravity and propelling them by cable motive power over the longitudinal undulating planes thereof. My invention consists, secondly, in the construction and arrangement of cable-gripping mechanism under a car, whereby one or more passenger cars or coaches traveling over the rails of the elevated structure may be readily and effectively attached to and detached from the cables, either automatically or otherwise. My invention consists, thirdly, of the details of construction and combination of parts hereinafter fully described, and pointed out in the claims."

Of the ten claims of this patent, all have been withdrawn from consideration except the fifth, which is for

"An elevated gravity and cable railway, in combination with a car provided with a gripping device operating automatically, a cable, and motive power, arranged substantially as described, to elevate simultaneously cars traveling in opposite directions, substantially as and for the purposes set forth."

There is clearly no invention in the series of inclines with which the structure of this patent is furnished, and by which cars are moved by gravity down such inclines and carried by momentum all the way, or partly, up reciprocal ascents. This is common to all gravity roads, and it is not understood that serious contention was made that the Thompson patent covers this feature of the structure. As already quoted, the patentee of the previous Hinkle patent says, in his specifications,

"I am aware that it is not broadly new to construct a gravity pleasure tramway in a circle and with alternate depressions and eminences for a car to pass over."

Of course, the momentum obtained by a car in running down one incline, will not carry it all the way up another of the same height, and to complete the circuit to the point of starting, the car must be assisted or lifted at some point on its journey. Out of the ten claims of the Thompson patent, the fifth, which we have quoted and which is the only one now relied upon by appellants, describes "an elevated gravity and cable railway in combination with a car provided with a gripping device operating automatically." This is a claim evidently meant to cover any automatically acting gripping device, and not to be confined to the particular gripping device described in the specifications. The claim thus broadly construed cannot be sustained, in view of the prior art. An automatic gripping device is shown in a British patent of 1823, and set forth in the record. So also, there is an automatic gripping device shown in the United States "Alexander patent," No. 269,554, of 1882, cited in the appellee's brief and set forth in the record. It is enough, however, to refer to the description of such a device in the specifications of the Hinkle patent itself. The device is not claimed, but is fully described both in the text and the drawings, and as will be

found by reference to lines 39 to 59 of the specifications, as contained in the official copy of the same.

Counsel for appellant, in their brief, admit that automatic grips were old and well known, and contend that the automatic grips of complainant and defendant should be held to be mechanical equivalents, although they differ in their construction. This being so, then, we have two elements of the combination, out of the three described in claim 5, that are old. This brings us to consider, whether the third element of the claim possesses such novelty as to sustain the patentability of the combination as described, or whether, if all the elements of the combination are old, there is, nevertheless, a new result, achieved by the coaction of these old elements; in other words, whether there is presented a patentable combination of old elements. We may answer the last question at once, by saying that, assuming all the elements of the combination to be old, there is presented a mere aggregation of the results of the several elements, and not a single new and beneficial result, never attained before, achieved by their coaction, as the product of the combination. It is not easy, and perhaps not possible, to formulate a definition or test of a patentable combination of old elements, which will serve in all cases to distinguish it from a mere aggregation of the results of the several elements of which it is constituted. But it is safe to say that the effect produced by the combination must be new and useful, and not such as would suggest itself to the mind of an ordinarily intelligent person experienced in the art to which the supposed invention relates. If the three elements of the combination described in the fifth claim of the Thompson patent, to wit, the gravity and cable road, the automatic grip, and the arrangement of the cable and motive power, to elevate simultaneously cars traveling in opposite directions, are all old, we fail to see any such new and useful result produced by the combination, as the law demands, or at least fail to see anything in the combination beyond the achievement of ordinary mechanical skill.

But the appellant strongly contends that the validity of the Thompson patent depends largely upon the novelty and invention which characterize the latter part of the fifth claim. To use the language of the appellant's brief,

"Thompson, however, was the first to combine a combined gravity and cable road, extending in opposite directions, and independent cars running thereon having automatic grips, with means whereby the cables on the oppositely ascending inclines were all operated simultaneously or in unison by the same motive power. This enabled any number of cars to be operated in the same and opposite directions simultaneously, without danger of interference, without danger of one car overtaking another, and at the same speeds. It is not pretended that this important feature is found in the prior art."

Whether this precise arrangement of the cables on the trolleys and drums, by which when actuated by a single motive power cars can be moved simultaneously in opposite directions and at the same speed, be new or not, we are constrained to believe that it did not require inventive genius to make such an arrangement. It seems perfectly clear, then, that as combined gravity and cable roads, and automatic gripping devices combined with the cable, were not new at the date of this patent,

the fact that a cable should be so arranged and actuated as to elevate "simultaneously cars traveling in opposite directions," cannot impart novelty or patentability to the combination. As said by counsel for appellees in his brief,

"Wherever there is an endless cable running along outgoing and return tracks, it will elevate the cars which take hold of it, wherever they happen to be situated, and if some of them do so upon the outgoing track and others upon the return track, at the same moment, it must perform its fuction simultaneously upon cars traveling in opposite directions."

The appellant laid much stress upon, and devoted much space in his brief to, the fact that the learned judge of the court below, in the course of his opinion accompanying the decree, alluded to his own knowledge of the existence of combined gravity and cable roads in the coal regions of Pennsylvania, long prior to the date of either of the patents in suit. The learned judge, in introducing the subject, used this language:

"The combination of ascending planes and descending inclines, over the one of which cars are elevated by means of a cable and over the other are propelled by the force of gravity, is not new in general railroad engineering or in this special branch of it."

He then cites specific instances of such combinations existing, some of them 50 years ago. He concludes what he has to say in this regard, as follows:

"These are matters of local history in the anthracite coal regions, so prominent and well known to me by personal acquaintance and observation, that I feel justified in referring to them in this way."

Then with the remark, "But to keep strictly to the record, there are several of the defendant's references which clearly disclose the elements under discussion," he proceeds to discuss the evidence of the record as to anticipation. We do not think the learned judge meant to maintain that the structures to which he referred were matters of which "judicial notice," as that phrase is used in our jurisprudence, could be taken. The reference seems to have been made out of the fullness of his knowledge and experience in regard to these structures and, as naturally, apposite to and illustrative of the questions discussed by counsel in the suit before him. No hint or suggestion is made by the learned judge, that the knowledge of the fact referred to by him, determined the result at which he arrived. That he freely stated the facts he had in mind, in regard to combined gravity and cable roads, tends no more to invalidate or impeach his decree than the fact that he had this knowledge, though he were silent in regard to it. Extended experience in the affairs of life, does not disqualify a judge, who does not use or seek to use it unfairly.

On the whole, we think the appeal must be dismissed.