### AMERICAN CHOCOLATE MACHINERY CO. v. HELMSTETTER.

#### (Circuit Court of Appeals, Second Circuit. August 1, 1905.)

#### No. 80.

1. PATENTS—INFRINGEMENT—COMBINATION.

   To constitute a combination it is essential that there should be some joint operation performed by its elements producing a result due to their joint and co-operating action, while in an aggregation there is a mere adding together of separate contributions each operating independently of the other. Hence a patent for a combination of elements in a machine is not infringed by a machine in which the elements of the combination are merely aggregated operating successively and independently of each other.

2. SAME—CHOCOLATE DIPPING MACHINE.

   The Holmes patent, No. 492,205, for a machine for coating confectionery, claim 1 covering "the combination with the drop dipping mechanism, of a jarring device for removing surplus coating material from the drops" is not infringed by the machine of the Weeks' patent, No. 634,633, in which the dipping and jarring devices are merely aggregated; the jarring operation being performed after the dipping has been completed, and the tray containing the drops removed to another frame.

3. SAME.

   The Gousset patent, No. 526,968, for a chocolate dipper, claim 4 held infringed.

4. SAME.

   In the Walter patent, No. 533,974, for a chocolate dipping or coating machine, claim 1, the only novel element of the combination described and claimed, is the reversible mounting of the dipping tray, and the patent is not infringed by a machine which does not contain such feature.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 129 Fed. 919.

This cause comes here on appeal from an interlocutory decree of the United States Circuit Court for the Southern District of New York, adjudging the validity, and infringement by defendant of complainant's three patents for chocolate machinery, namely, patent No. 492,205, granted February 21, 1893, to Daniel M. Holmes, claim 1; patent No. 526,968, granted October 2, 1894, to Cyprien Gousset, claim 4; and patent No. 533,974, granted February 12, 1895, to William Walter, claim 1, and awarding an injunction and an accounting.

Hector S. Fenton, for appellant.

Charles C. Gill, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The complainant is a corporation engaged in the manufacture and sale of chocolate machinery. The defendant is a manufacturer of chocolate cream drops and other confectionery. He operates machines and dipping trays connected therewith under licenses in which he has acknowledged the validity of said Gousset and Walter patents and has agreed not to infringe upon or attack them. He is also using a machine which is not licensed, manufactured by one William H. Weeks, of Philadelphia, under Weeks' patent, No. 634,633, which machine, it is claimed, infringes each of the three patents in suit. These patents relate especially to the coating of candy cores with chocolate in the making of chocolate cream drops. The record and briefs discuss the peculiar conditions attendant upon the manufacture of these drops, the character of the chocolate used, the necessary temperature of the rooms, etc., the alleged primary character of the inventions in suit, the estoppel arising from the license, the indefiniteness of the specification of the Holmes patent and its alleged impracticability, and the prior art. The view which we have taken of the issues herein dispenses with the necessity of the consideration of any question except that of infringement.

The single claim in suit of the Holmes patent is as follows:

"(1) In a machine of the character herein specified, the combination with the drop dipping mechanism, of a jarring device for removing surplus coating material from the drops, substantially as shown and described."

The machine therein referred to is one for coating confectionery with chocolate, and the combination by which this is accomplished, comprises mechanism whereby a dipping device containing the drops to be coated is caused to descend into a tank of coating material and is then elevated and subjected to a series of successive repeated concussions while the drops are in the dipping device, the combined operation of dipping and jarring being automatically effected by means of mechanism which continuously carries the drops through the coating and jarring processes until they are ready to be deposited upon a paper reel.

It may be assumed for the disposition of this case that the machine covered by this claim is a true combination, and that all the parts co-operate to perform its functions. It may also be assumed that while the dipping device considered alone was old in view of the prior art, and the jarring device must be limited in view of the prior art to the precise construction shown, yet that the combination involved invention, if limited to the co-operating construction described in the specification.

In defendant's machine, even if it be assumed that the dipping and jarring devices separately considered are practically identical with those covered by the combination of the claim in suit, yet they have no co-operating or combined operation. They are, it is true, aggregated for convenience of operation; but it is not essential that they should be physically connected, nor, except as may be required by reason of the character of the material used, that there should be any connection between the successive action of the two operations. It is admitted that the patented combination provides for a jarring of the

dipping device while the drops are in it. In the defendant's machine the dipping device is not jarred while the drops are in it, but when the dipping operation is completed, the tray with its contents is removed by the attendant into an adjacent jarring frame and, thereupon, the operation of the jarring mechanism begins.

If the patent in suit had covered in separate claims the dipping and jarring devices, respectively, and the question of infringement had been the only one in issue, a different situation would have been presented. But as the patentee has failed to make such claims, and relies only upon one for a combination specifically described as dependent upon successive interdependent operations, he is bound by the self-imposed limitations of his claim. The fact that the two devices are not separately claimed, but only in combination, would indicate that the patentee regarded the elements individually considered as old. The distinction between a combination and an aggregation lies in the presence or absence of mutuality of action. To constitute a combination it is essential that there should be some joint operation performed by its elements, producing a result due to their joint and co-operating action, while in an aggregation there is a mere adding together of separate contributions, each operating independently of the other. Hailes v. Van Wormer, 20 Wall. 353, 25 L. Ed. 241; Reckendorfer v. Faber, 92 U. S. 347, 357, 23 L. Ed. 719; Pickering v. McCullough, 104 U. S. 310, 318, 26 L. Ed. 749.

Defendant's machine comprises merely an aggregation of two devices. There is no mechanical or functional mutuality of operation. It is not a combination because there is no co-operation between the coating and jarring mechanisms, because the two devices do not unitedly perform their functions, and because they are not necessarily combined in one machine, and do not act together to secure the final result.

"Each pair was used by itself, and might be so used at any distance of time or place from the other; and if the two were used at the same place and in immediate succession of time, the result of the action of each was separate and distinct, and was in no way influenced or affected by the action of the other. This was no combination that would sustain a patent." Beecher Manfg. Co. v. Atwater Manfg. Co., 114 U. S. 523, 524, 5 Sup. Ct. 1007, 1008, 29 L. Ed., 232, and cases cited.

In defendant's machine the dipping and jarring mechanisms may be physically and mechanically connected; they may best perform their respective functions in the course of a continuous operation effected through a driving wheel from a common source of power. But there is absolutely no union or mutuality of operation, no conjoint or qualifying co-operation of the parts. Each device is individually independent in the sense that each performs its peculiar function without affecting or being affected by the action of the other device. The dipping device dips the tray containing the drops, raises it to its elevated position and stops. The tray is then manually removed from the machine, or the portion thereof which dips, and is placed in another independent machine whose sole function is to impart a series of concussions. The two devices are as functionally unconnected as though they were mechanically separated. Their func-

tions are distinctly opposed—the one applies the coating, the other removes it.

The fourth claim of the Gousset patent, the only one in suit, is as follows:

"(4) A chocolate dipper comprising an open frame, a series of parallel wires crossing the frame, and secured at their ends thereto, and a series of cups formed of a series of serpentine or zigzag wires crossing the frame and resting at their upward bends upon said cross wires, and the second series of serpentine or zigzag wires at right angles to the first series, and having their downward bends crossing the downward bends of the said first series substantially as described."

It is admitted that defendant as licensee under this patent is estopped to deny its validity. Under the rule permitting a licensee to show the state of the prior art for the purpose of enabling the court to ascertain the scope of the patent in suit, defendant has introduced and relies upon a prior German patent, No. 18,943, to Anton Reiche, dated 11 December, 1881. These baskets are designed to form rows or a series of supporting pockets for the creams which are to be dipped in the chocolate solution. These pockets are formed within an oblong rectangular frame by combining two oppositely disposed series of wires, supported by said frame and by parallel cross wires, and from which the pocket wires extend downwardly in a curved or zigzag direction, so that one of the conical creams may be placed in each pocket with the conical portion pointing downward, and when so placed is supported at its point by the intersection, and at its sides by the upwardly bent portions, of the pocket wires.

In Reiche's tray the parallel spring wires run lengthwise of the frame. In the Gousset patent they run crosswise. In defendant's tray they run both lengthwise and crosswise. In Reiche's tray the curved pocket wires extend from the frame in diagonal lines; in the tray of the patent in suit and that of defendant they extend from the frame at right angles to it. A comparison of the baskets of the Reiche patent with that of the patent in suit, and that used by defendant, demonstrates beyond question the infringement by defendant, and indicates why he has appropriated the Gousset device, when it was open to him to use the Reiche device. The defendant's tray, by reason of its double set of lengthwise and crosswise supporting wires, is necessarily stronger and better adapted for practical and extensive use than the Reiche tray. It was impracticable for defendant to secure this advantage with the Reiche construction because the diagonal arrangement of the curved pocket wires precluded the possibility of the use of such double supporting sets of wires for additional strengthening. Furthermore, the Gousset arrangement of curved pocket wires crossing each other at right angles provided for a more snugly fitting and, therefore, better support for the sides of the cream drop. These objections were obviated and advantages secured by the appropriation of the Gousset device, from which the defendant's tray differs in construction only in the addition of the lengthwise parallel supporting wires of Reiche. In other respects it is practically identical with the patented tray.

Claim 1 of the Walter patent is as follows:

"(1) In a machine of the character described, the receptacle to contain the coating substance, and the vertically movable tray reversibly mounted over said receptacle, and adapted to hold the pieces to be coated, combined with means for raising and lowering said tray; substantially as and for the purposes set forth."

It will be noted that this claim also is for a combination, namely, of a tray with means for raising and lowering the same. The expert for complainant admits that all the elements in said combination, and operating in substantially the same way, are old, with the exception of the "vertically movable tray reversibly mounted," etc., and that this vertically movable tray is in no sense a removable basket tray, such as is described by Gousset, but is hinged to the drop dipping mechanism, slides on a part thereof and is a part thereof. The only novel element in this tray is its reversible mounting. The function of this element and the mechanical construction by which it is exercised is thus stated in the specification:

"Said tray having pockets to receive and carry the pieces to be coated is made reversible for convenience in quickly applying and removing the said pieces and in causing them to be dipped while their upper surfaces are pointing downward; and in accordance with a further part of my invention the pivots sustaining said movable tray have cams," etc.

In view of the admissions referred to it is unnecessary to quote from the patent the repeated expressions therein which show that an essential element of the Walter claim in suit was such a reversible, pivotally hinged, nonsegregable mounting of the dipping tray on the dipping mechanism that it would become an integral part of the combination and co-operate functionally and mechanically with the dipping mechanism, so that the combination might, by the means described, perform its functions, as stated in the specification quoted above, "for the purposes set forth." The defendant does not infringe this combination because he uses the Gousset tray, removable and detachably hung on hooks, which originally receives the drops for dipping points downward; because his machine does not reverse the drops from an original position pointing upwardly to a position pointing downwardly for dipping; and because his tray is only reversed to turn the drop point upwards after it has been physically detached from the dipping mechanism and removed to a separate independent jarring apparatus; and, therefore, defendant's machine is not a combination and does not operate "for the purposes set forth" in the patent in suit.

The decree of the court below is affirmed as to the fourth claim of the Gousset patent, and reversed as to the first claims of the Holmes and Walter patents, respectively. Neither party is entitled to costs as against the other in either court.