SAFETY CAR HEATING & LIGHTING CO. v. CONSOLIDATED CAR
HEATING CO.

(Circuit Court of Appeals, Second Circuit. November 17, 1909.)

No. 49.

1. PATENTS (§ 328*)—INVENTION—CAR HEATING APPARATUS.

The Searle patent, No. 707,361, for a railway car heating apparatus, which consists of a system of pipes for the circulation of hot water, the claimed novel feature being the combination of one transfer heater in the riser pipe and another at the lowest point of the circuit, is void for lack of invention in view of the prior art; no new result being accomplished by the use of the two heaters, conceding that they act in combination, and are not merely an aggregation.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

2. PATENTS (§ 268*)—SUIT FOR INFRINGEMENT—LACHES.

An unexplained delay of 12 years after alleged infringement was commenced before bringing suit constitutes such laches as precludes the recovery of profits or damages.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 412; Dec. Dig. § 268.*

Laches as a defense in suits for infringement, see notes to Taylor v. Sawyer Spindle Co., 22 C. C. A. 211; Richardson v. D. M. Osborne & Co., 36 C. C. A. 613.*]

Appeal from the Circuit Court of the United States for the Northern District of New York.

Suit in equity by the Safety Car Heating & Lighting Company against the Consolidated Car Heating Company. Decree for defendant (160 Fed. 476), and complainant appeals. Affirmed.

Duell, Warfield & Duell (Randolph Parmly, F. P. Warfield, and C. H. Duell, of counsel), for appellant.

W. K. Richardson, Charles Neave, J. Lewis Stockpole, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. The patent to Searle relates to that class of circulatory heating systems in which a liquid, after being heated and

freed of air and steam, may be employed for warming railway cars; the heat being derived from a main source, preferably a steam boiler.

He employs a circulatory system, which includes a heat-radiating portion with an ascending pipe on one side thereof and a descending pipe on the other, a heater located at substantially the lowest point of the circuit, and means for transferring heat derived from a main source into operative contact with the circulating liquid in the heater. In some instances he employs a circulatory system, including a heat-radiating portion with ascending and descending pipes, with a heater in the ascending pipe or upon one side thereof and a second heater located below the first at substantially the lowest point of the circuit. These heaters may be of any desired character. When used for car heating purposes, the patentee preferably derives heat for one or more of said heaters from a common source, such as the·locomotive boiler. To this end he employs a main steam pipe or other suitable mechanism adapted to be connected to a main source of heat supply and also with a plurality of heaters. In practice, one or more heaters may impart heat to the said liquid by being in operative connection with the main source of heat supply. This connection may be effected in various ways; for instance, by letting the heat derived from the main source be carried through a pipe or passage containing the circulating liquid, or by letting the steam derived from the main source be carried into a pipe or passage which incloses a portion of the system containing the circulating liquid. Searle also provides for an emergency heater in case of a temporary failure of the heat derived from the main source. The claims are as follows:

"1. The combination of a circulatory system that includes a heat-radiating portion and has an ascending pipe on one side thereof and a descending pipe on the other side thereof, a heater in the ascending pipe or upon one side thereof, and a second heater located below the first-named heater and at substantially the lowest point of the circuit.

"2. The combination of a circulatory system that includes a heat-radiating portion and has an ascending pipe on one side thereof, a descending pipe on the other side thereof, and an expansion chamber located above said pipes and having communication therewith, an emergency heater having a combustion chamber inclosing a portion of the ascending pipe of said system. a primary heater located at substantially the lowest point of the circuit, and means for transferring heat derived from a main source of heat supply into operative contact with the circulating liquid in said last-named heater.

"3. In combination, a water-circulating system having a radiating portion in the descending pipe or upon one side thereof, a heater in the ascending pipe or upon the other side thereof, and a second heater located below the first-named heater and at substantially the lowest point of the circuit."

All the claims are for combinations. The first claim is for a combination which contains the following elements: (1) Circulatory system, including a heat-radiating portion, with an ascending pipe on one side and a descending pipe on the other; (2) a heater in the ascending pipe or upon one side thereof; (3) a second heater below the first and at substantially the lowest point of the circuit. The second claim is for a system similar to that of the first claim; but it adds an "expansion chamber" to the combination, and substitutes for the heater of the first claim on the riser "an emergency heater having a com-

bustion chamber." The third claim differs from the first claim only in requiring "a radiating portion in the descending pipe."

It will be observed that none of the claims specifies steam heaters, or a combination of steam heaters. The specification expressly states that the heat may be derived from any prime source, preferably a steam boiler; but any suitable heat generator will suffice. The upper and lower heaters, or either of them, may receive their heat from any suitable source. When, however, the invention is employed in warming railway cars—and not the "other structures" for which it may also be used—it is preferable that one or more of the heaters derive the heat from a common source; for instance, the engine boiler. It is as plain as language can state it that the patentee intended to claim a system where the heat was derived from the boiler, or any other heat generator, adapted to heat the circulating liquid. A steam pipe is preferably employed, which may be connected with one or a plurality of heaters. One or more of such heaters may be used. If, however, the specification be construed, as it may well be, to require at least one steam heater, the specification makes it plain that the water in the pipes may be properly and sufficiently heated by contact with the steam in the lower heater. In other words, one steam heater will do the work. The heater on the riser pipe is mentioned as one which may be used separately, or simultaneously with the lower heater, to form part of a single flow system. The patentee says that:

"The location of the various parts within the limitations specified in the appended claims as to the location of the heaters, one below another and at substantially the lowest point of the circuit, may also to a considerable extent be varied without departing from the principle of my invention."

He also says that the expression used to designate the heaters—

"is to be understood as a term employed in the art to embrace a heater of any suitable description adapted to impart its heat to the liquid in the pipes or passages of the system."

Infringement, except upon a theory of construction which it is unnecessary to consider, is admitted. It is conceded by the complainant that all of the elements of the combination, when segregated, are old; but it is argued that the combination produces a novel result, not known before March 23, 1888, the date of Searle's application. The combination of one transfer heater in the riser pipe and another at the lowest point of the circuit is the novel feature of the claims which the complainant contends supports invention. Unless this combined action produces a new result the patent is invalid for lack of patentability.

The Circuit Court held that the sole function of the upper heater is to heat the water in the pipe, taking it as it finds it when it arrives. "If this were so," says complainant's brief, "there could be no possible claim of novelty in the combination, but the decision overlooks or fails to appreciate the facts, which show that there is co-operation between the two heaters which produces a result which could not be otherwise obtained. The fact is that the upper heater aids the lower heater in transferring heat to the water, since it aids it in starting and continuing a circulation, so that the heat can be transferred from the

steam to the water." So that the question can be still further narrowed: Do the heaters act independently or jointly? If they act independently, it is an aggregation; if they act jointly, and a new and useful result is produced, it is a combination.

The prior art, as stated in the opinion below, need not be repeated here, and in view of the express declaration of the patentee that his system may be used in railway cars and other structures we do not see why "other structures" may not be examined in considering the prior art. Baker, in 1868, obtained a patent for a successful circulating hot-water system for heating cars; but he employed a combustion heater, which was dangerous in case of accidents. It was found necessary, therefore, to substitute some other heater for the stove, and a steam drum with steam supplied from the locomotive immediately suggested itself to a number of inventors. The interference which was declared between 13 of these applicants, among them Searle and Towne, was declared in favor of Towne and against Searle. Towne shows that the steam heater and combustion chamber may be in two separate structures, and he says:

"If separated, the combustion chamber and its coil of water pipes might be in one position, and the steam heater or transfer chamber and its coil be in another position, either in or under the car, the pipes of both and of the circulatory system all being connected together, substantially as indicated in Fig. 7 at T. T."

Having in mind the statement of Searle that one steam heater is sufficient and the language of the second claim, where one steam heater and one combustion heater are employed, it would seem that this statement in the Towne patent comes very near being an anticipation, and, in any view, leaves no room for invention. A mechanic, following the direction of the Towne patent, who left the stove in its usual place and located the steam drum under the car, would infringe the second claim of Searle's patent; and, if the other claims, in view of the statements of the specification, are construed as covering a stove in the riser pipe—and we see no escape from the conclusion that they may be so construed—it would infringe these claims also. Being before, it anticipates. The article in the Railway Age of May 13, 1887, is, in part, as follows:

"The device consists of a drum, in which is placed a bench radiator, through which the steam is forced. The cold-water pipe of the Baker or other water-circulating heater is tapped near the furnace, and the pipe is brought down and connected with the bottom of the drum. The hot pipe of the system is tapped at a point where it leaves the furnace and brought down to the top of the drum, which is placed horizontally under the cars just back of the trucks, and as near to the truck as possible. The drum is also placed, when possible, up between the sills, on the same side as the heater. By these connections the drum becomes a part of the regular circulating system of the car, the water in the drum being around the steam pipes of the coil or radiator, the condensed steam being carried off by a trap. It is claimed that under the system about to be introduced by the Safety Car Heating & Lighting Company the now existing devices are kept intact for use as emergency heaters, and there are no complicated changes to be made, in order to change from steam heat to fire, or from fire heat to steam; in fact, with the water-circulating system, both could be used at once."

This article is criticised as describing an inoperative system; but we are unable to see why it should not operate, and especially so when it appears that it actually worked satisfactorily. The record contains many other patents and publications relied on as anticipating or limiting the field of invention; but in the light of the full discussion by Judge Ray we deem it unnecessary to refer to them in detail.

Even if it be conceded that claims 1 and 3 require two steam heaters, we are not persuaded that a new result is produced by their use. If they act independently, it is admitted that the claims are for an aggregation. The patent says nothing about a new result. If such existed, it is remarkable that Searle should have failed to state it, but should, on the contrary, have stated that one steam heater would do the work. We cannot resist the conclusion that as the cars grew larger and the radiating surface greater a second heater was introduced to aid the circulation and maintain uniform radiation. That the additionl heater does this there is no doubt, but it does it in the old way. There is nothing magical about it. The water had far to go, the single heater needed help in propelling it, and another heater was introduced to furnish this help. Its introduction did not produce a revolution in hydrostatics. It did its assisting work, but it did it in the old way. It gave an auxiliary push to the circulation. The Dixon patent was for a minor improvement, and expired over a year ago. No injunction can, of course, be issued. The proof shows that the complainant waited for 12 years before bringing this action, and is guilty of such laches as will preclude a recovery for profits and damages. Nothing need be added to the opinion of the Circuit Court on this subject.

The decree is affirmed, with costs.