RYAN CAR CO. et al. v. LIVE POULTRY TRANSP. CO.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1911. Rehearing Denied March 29, 1912.)

No. 1,757.

PATENTS (§ 328*)—INVENTION—POULTRY CAR.

The Mudd patent, No. 539,229, for an improvement in poultry cars, which consists in moving the food and water trough, which had previously been placed on one side of each coop into the partition between the coops, while accomplishing improved results, involved no mechanical change but merely a change of location, and, in view of the prior art and of the Street patent for stock cars in which the troughs were similarly located, is void for lack of invention.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Live Poultry Transportation Company against the Ryan Car Company and the Lemac Carriers' Company for infringement of patent No. 539,229 to Francis X. Mudd, May 14, 1895, for an improvement in poultry cars, assigned to complainant. Decree for complainant, and defendants appeal. Reversed.

For opinion below, see 182 Fed. 841.

George P. Fisher, for appellants.

P. C. Dyrenforth and Russell Wiles, for appellee.

Before GROSSCUP and BAKER, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge. Claims 1 and 2 are as follows:

"1. In a poultry car containing coops at opposite sides of an aisle, the upright posts, at the aisle, of the framework of the coops, said posts having openings, at which to insert and withdraw the troughs, and troughs supported in the coops to extend lengthwise of and underneath the transverse beams of their framework, substantially as described.

"2. In a poultry car containing coops at opposite sides of an aisle, the upright posts, at the aisle, of the framework of the coops, said posts having openings, at which to insert and withdraw the troughs, shells supported in the coops to extend lengthwise of and underneath the transverse beams of their framework, and troughs removably confined in the shells, substantially as described."

---

*For other cases see same topic & § NUMBER in Dec & Am. Digs. 1907 to date, & Rep'r Indexes

The poultry car in question may be understood by imagining a box car with two vertical tiers of poultry crates stacked up on each side of a central aisle, one upon another, leaving a passageway in the center, lengthwise of the car. The framework of each pair of crates consists of a vertical post from floor to ceiling at the side of the passageway, and two horizontal beams from post to wall, centrally located between the crates. Suitable floors and wire screen ends, each end having a door, complete the crates, except a food and water device, which is the subject of the invention claimed. This is a trough hung in a semicircular shell. The shells are supported by hangers from the upper one of the two horizontal beams forming the common sides of each pair of coops, and the trough is inserted into the shell by pushing it through a hole in the upright posts opposite the end of the shell. The other horizontal beam is just below the shell; thus completing the sides of the crates. One trough thus serves two crates, and each crate has two troughs. The gist of the invention claimed is the location of the feed trough beneath the transverse beam, so situated as to prevent the fowls from roosting on the trough, and thus fouling it, and also keeping them from being crowded or packed under the trough and thus injured or killed.

The modern poultry car was invented by William P. Jenkins, described in his patent of 1888, No. 384,913, and is generally similar to the Mudd car, here in question. In the Jenkins car a single trough for each crate is hung inside the coop, near one partition, supported by hangers, into which the trough may be slid through the door from the aisle, and withdrawn in the same way, sufficient space being left in the network of the doors to admit the trough endwise. Mudd improved this device in his patent of 1893, No. 489,657, by supporting the trough in a shell, open at the aisle end, the same as in his later patent in suit. He also hinged the troughs midway of their length, so that they could be easily removed. They were left near the side of the crate, as in Jenkins'.

This position of the troughs was found to be quite objectionable. Being situated in the crates, instead of in the partitions between them, the dimensions of the coops were made smaller, the fowls were crowded under the troughs and killed, and the food and water were polluted and the chickens poisoned. To overcome these objections, which are shown by the record to have been important ones, Mudd simply changed the troughs and their supporting shells to a position directly below the transverse beams of the coops, and moved the end-openings for the shells from the network to the upright posts, for the insertion and removal of the troughs. Thus each trough with its shell or shield is made part of a common partition between two coops, and the difficulties referred to are obviated. A beneficial result was thus obtained; and the only question is whether invention was required to make the change of location.

While the result was beneficial, the Mudd patent in suit was not the first to accomplish it. In his patent of 1893 the inventor had already designed the end openings for his troughs, as well as the present form of constructing them. Taking them as they were he moved

them a few inches to the coop partitions, and made the end openings to correspond. Not only was this merely a change of location, but Street in his stock car had already done the same thing. In his patent of August 30, 1870, No. 106,888, he had placed his food and water troughs directly under the partitions of the stalls, just as Mudd did with his. Mudd simply applied to a poultry car what Street had long before applied to a car for the transportation of horses, cattle, sheep, and hogs. Had he not made his invention of 1893, for openings into the aisle for the insertion and withdrawal of the troughs, this feature, together with the beneficial change of location, would probably have been a patentable combination in spite of Street's invention. But with both prior discoveries before him there was absolutely nothing new in what he did in 1895.

This is one of a class of cases where an improved result follows without mechanical change. The troughs, shells, uprights, end openings, and hangers in the last patent operate almost exactly as they do in the first. In a mechanical sense there is little or no difference. But by reason of a change of location they take on the additional function of serving as part of the coop partition. It is true that the results due to the change of location are important and beneficial, but these come wholly from such change and not from any difference of mechanical operation. To illustrate this, take Fond du Lac County v. May, 137 U. S. 395, 11 Sup. Ct. 98, 34 L. Ed. 714, where a universal bar designed to lock and unlock a row of prison doors, operated by a lever, was lengthened so as to extend through a corridor and beyond a grating, thereby protecting the officer from attack by the prisoners while operating the device. The only mechanical change over the earlier form, which was worked in the corridor around the cells, was interposing a grating. This was done wholly for protecting the officer, and had nothing to do with locking and unlocking the doors. It was held that there was no patentable combination between the grating and the bar and lever device. In this case the change of location was to protect the chickens from injury. There was no reason connected with the mechanical working of the device itself which suggested any change, nor even any change in form, proportion or degree—merely "doing the same thing in the same way, by substantially the same means, with better results." Market St. R. Co. v. Rowley, 155 U. S. 621, 629, 15 Sup. Ct. 224, 39 L. Ed. 284. Incidentally the changed location made more room in the coops and brought the trough into the partition, but the real reason for the change was to protect the fowls. The essential features of the patent are found in Mudd's and Street's prior patents, and the two functional changes just referred to followed naturally the mere change of location, without the exercise of the inventive faculty in the slightest degree.

Decree reversed, and cause remanded, with instructions to dismiss the bill.

Reversed.