## MEAD MORRISON MFG. CO. v. EXETER MACH. WORKS.

(District Court, M. D. Pennsylvania. July 20, 1914.)

### No. 122.

1. PATENTS (§§ 25, 26*)—"COMBINATION"—CO-OPERATIVE ACTION OF ELEMENTS—"AGGREGATION."

To constitute a combination, it is essential that there should be some joint operation, performed by the elements producing a result due to their joint and co-operating action, while in an "aggregation" there is a mere adding together of separate contributions, each operating independently of the others.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. §§ 25, 26.*

For other definitions, see Words and Phrases, vol. 2, pp. 1275, 1276.]

2. PATENTS (§ 328*)—INVENTION—HOISTING APPARATUS.

The Norris patent No. 722,613, for a hoisting apparatus for use in coal towers, in which one of the two engines used is superimposed on the other to economize space, but without changing their separate action, does not embody a combination, and is void for lack of patentable invention.

In Equity. Suit by the Mead Morrison Manufacturing Company against the Exeter Machine Works. On final hearing. Decree for defendant.

See, also, 196 Fed. 789.

Emery, Booth, Janney & Varney, of Boston, Mass., for plaintiff.

E. G. Siggers, of Washington, D. C., and A. L. Williams, of Wilkesbarre, Pa., for defendant.

WITMER, District Judge. In this suit, by bill in equity, the Mead Morrison Manufacturing Company charges the Exeter Machine Works with infringement of letters patent of the United States numbered 722,613, granted March 10, 1903, upon the application of Almon E. Norris, filed May 3, 1902, and assigned to the complainant.

The invention relates to an improvement in hoisting apparatus, and the particular act of infringement charged is the construction and installation, March, 1911, of a pair of superimposed engines in the tower of the Eastern Coal Company, located at the Dyer Street Wharf, at Providence, R. I. That the so-called infringing structure embodies the features and functions embraced within the terms of claims 1, 2, 3, 4, 5, 6, 7, 8, and 10 of the patent cannot be successfully disputed. The case rests chiefly upon the validity of the patent and the laches charged against the complainant in not faithfully and diligently asserting its alleged rights under the grant.

Regarding the nature of the invention the patentee says:

"This invention relates to hoisting apparatus, and especially to what are known as 'coal towers.' These towers as usually constructed are mounted upon a suitable elevated track and carry a boom, on which travels a carrier or trolley, a bucket or other hoisting device being suspended from the carrier. Usually the tower carries two engines, which are located in different places in the housing carried by the tower, and one of which operates the bucket and the other of which operates to move the carrier back and forth upon the track." Page 1, lines 11 to 23.

After thus setting forth the state of the art, the patentee discloses his contribution by further stating:

"In place of these two separately situated engines I substitute a single structure having a trolley operating engine and a hoisting engine."

The novel features of this substituted structure the patentee continues are as follows:

"My engine mechanism comprises a horizontally arranged bucket hoisting engine, upon the frame of which is a carrier or trolley operating engine, and preferably one of said engines will be adapted to operate the driving gearing for the tower, and will also have connected to its crank shaft a winch head, by means of which the boom may be raised and lowered. By this arrangement of engine I economize room in the tower and, what is more important, am enabled to place all the levers of the engine mechanism within easy reach of a single operator." Page 1, lines 30 to 42.

"The hoisting engine and the trolley operating engine are capable of operation independently, by placing one on top of the other, as illustrated, provide a form of engine which has many advantages when employed in combination with a coal handling tower." Page 2, lines 17 and 23.

Having described his invention as consisting of an arrangement of the engines heretofore located separately in the housing of the tower by placing one on top of the other, capable of operation independently as before, the patentee makes his claim in form as typified by claim 2:

"In a hoisting apparatus, a carrier movable on a track, a hoisting bucket suspended from the carrier, a hoisting engine to operate the bucket, said engine comprising two cylinders, the pistons of which are operatively connected to opposite ends of a hoisting drum shaft, and a carrier operating engine supported on the frame of the hoisting engine and situated between the cylinders thereof."

It is the contention of the complainant that the claims of the patent are combination claims, combining the usual elements of a coal hoisting plant with the novel features of engine construction. As exemplified from the defendant's structure, involving the placing of the trolley engine upon the hoisting engine, it does not effect a combination of elements. The two engines continue to operate successively or independently of each other, and there is no change necessitated by the adjustment either in the valves, foot, and hand levers or other equipment to control or operate them. Mr. Bramhall says that:

"In installing the defendant's superimposed engines in the tower of the Dyer Street Wharf the same levers were used, which had previously been employed in the separately situated engines in use there and that no change was made necessary by the exchange of engines."

Furthermore the placing of the trolley engine upon the frame of the hoisting engine does not result in any different operations shifting the carrier or trolley along the track upon the boom, or in hoisting, opening, and closing the bucket suspended from the carrier. These operations are all the usual type whether performed by this superimposed engine or by the old type of engine arranged in separate parts of the tower. Referring to this subject, the defendant's expert very aptly says:

"But this location of the trolley engine did not in any way change the mode or character of the operation of the old combination of elements, which,

as a combination presented absolutely nothing of novelty. As an aggregation, the structure did have the novelty of the trolley engine supported on and above the frame of the hoisting engine. But this novel location of the trolley engine in no way affected the operation of the complete combination, which operates just the same with the trolley engine on top of the hoisting engine as it does with it in front of the hoisting engine or at one side thereof."

Comparing the operation of a set of direct acting engines located side by side, or in tandem, with the same engines superimposed, as in the patent, I discover no difference, nor the accomplishment of any new useful results. It must be conceded that by mounting the smaller engine upon the larger some space is economized, but this does not affect the functions of the structures or their effectiveness.

As was said by Judge Gray, in the case of James Spear Stove & Heating Co. v. Kelsey Heating Co., 158 Fed. 622, 85 C. C. A. 444:

"The aggregation of these several old elements in one structure may have produced, and doubtless did produce, a hot air furnace that was some improvement upon the prior art, in the respect that it may have been stronger, mort durable, or easy of construction. But these results were due to the function of each old element acting independently and by itself, without coaction with other elements. * * * Each of these elements contributed its own function and attribute, which was in no wise dependent upon the others, or affected thereby. We are compelled, therefore, to think that claim 5 sets forth a mere aggregation of old elements, and not a new combination involving patentable invention."

[1, 2] To constitute a combination it is essential that there should be some joint operation performed by the elements, producing a result due to their joint and co-operating action, while in an aggregation there is a mere adding together of separate contributions, each operating independently of the other. Am. C. M. Co. v. Helmstetter, 142 Fed. 978, 74 C. C. A. 240; L. A. Thompson Scenic R. Co. v. Chestnut Hill Casino Co., 127 Fed. 698, 62 C. C. A. 454; Osgood Dredge Co. v. Metropolitan Dredging Co., 75 Fed. 670, 21 C. C. A. 491. Unless the combined action produces a new result the patent is invalid for want of patentability. Applying the test employed in Safety Car Heating & Lighting Co. v. Consolidated Car Heating Co., 174 Fed. 658, 98 C. C. A. 412:

"Do the engines act independently or jointly? If they act independently it is an aggregation; if they act jointly and a new and useful result is produced, it is a combination."

It is not doubted that the superimposed direct acting engines are more efficient, in many ways, than the separately situated geared engines, and can be operated with less vibration and expense incident thereto; however, it is equally well settled that such is not due to the mounting of the direct acting engines, but to the very character or construction of the engines in whatever position they are operated.

Then again if the arrangement of the engines would be regarded as improving the combined efficiency of them, the combination of the two engines clearly involved only ordinary mechanical skill. The state of the art in coal hoisting towers shows that it was common, prior to the alleged invention of the patent in suit, to employ two separately situated engines, each mounted on the floor of the engine room of the coal tower, one alongside of the other with a passageway between. It was

also old in the art to employ direct-acting engines. It is a well-known fact that the engine room of a coal hoisting tower is made as large as the conditions will permit, but as a general thing the room is quite small. To make the room any larger it would be necessary to enlarge the whole tower. As long as the small-sized geared engines were satisfactory to the owners of the coal towers, there was no occasion to alter the separate relation of the two engines, and because of the size of the geared engines it was entirely practicable to mount them on the floor of the engine room; but when it became necessary to increase the output of coal hoisting towers, it was found advisable by some engineers to substitute a direct-acting engine for the geared engine, and this necessitated a change in the relative positions of the engines. A direct-acting engine is a much larger engine than a geared engine designed to handle the same amount of coal. A direct-acting hoisting engine could not be placed in the same space occupied by a geared hoisting engine; neither could a direct-acting trolley engine be used in the same space as the geared trolley engine. It was, therefore, necessary to make some provision to receive the direct-acting hoisting and trolley engines. It was not practicable to increase the size of the engine room, for this would necessitate an increase in the size of the whole tower. Therefore, the only thing to be done was to superimpose the smaller, i. e., the trolley engine, on the frame of the hoisting engine. This was easy of accomplishment, because the legs of the direct-acting hoisting engine were spaced apart sufficiently to accommodate the legs of the framework of the direct-acting trolley engine. After placing the trolley engine upon the hoisting engine, it was a simple matter to employ a few bolts to connect the two frames together. The solution of the problem was obvious, and the expedient of connecting the two engines in superimposed relation purely a mechanical one. To this effect is the testimony of the defendant's expert; and the complainant's expert also stated that:

"The direct-acting engines of the patent in suit are peculiarly fitted for such union and give it the capacity by the combining or the unification of these two engines without any modification. The direct-acting engines, in other words, offer one of the characteristics of engines which is better adapted for the bringing together or the combination as pointed out in the specifications and drawings of the patent."

Continuing, he says:

"In the first place they (the direct-acting engines) have in their construction a space between the cylinders and a space between the cylinders and the front of the engine which would be sufficient to take in the trolley engine."

The superimposed direct-acting engine of the type patented was but the natural and reasonable outgrowth of the gradual development of the coal hoisting apparatus. When the increasing coal shipments made necessary the use of a different type of engine, it naturally and spontaneously occurred to the engineers having charge of these plants to employ the large, direct-acting engines, and since these engines could not be separately situated in the limited space then occupied by the separately situated smaller and slow, though powerful geared, engines, it was necessary to superimpose them. To bring about this superimposition no change or modification of either engine was requir-

ed, and the step was obvious to a man of usual skill, and is not patentable.

As was said by Justice Bradley in Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438:

"To grant to a single party a monopoly of every slight advance made, except where the exercise of invention, somewhat above ordinary mechanical or engineering skill, is distinctly shown, is unjust in principle and injurious in its consequences."

Without commenting on the many cases in which this doctrine has been applied the following may be consulted as sufficient authority for the conclusion reached: Aron v. Manhattan Railway Co., 132 U. S. 84, 10 Sup. Ct. 24, 33 L. Ed. 272; Morris v. McMillin, 112 U. S. 244, 5 Sup. Ct. 218, 28 L. Ed. 702; Pennsylvania Railroad Co. v. Locomotive Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222; Hollister v. Benedict, 113 U. S. 59, 5 Sup. Ct. 717, 28 L. Ed. 901; Ryan Car Co. v. Live Poultry Trans. Co., 195 Fed. 525, 115 C. C. A. 435; Dunbar v. Eastern Elevator Co., 81 Fed. 201, 26 C. C. A. 330.

The doctrine of commercial success, like the presumption of the grant, it is true, as argued by complainant, raises a presumption favoring the validity of the patent, which in doubtful cases turn the scale in favor of invention, nevertheless, where, as in the present case nothing more was accomplished than the mounting of one well-known engine upon the frame of another peculiarily fitted for the purpose, so that the same could be accomplished by the most ordinary mechanic without materially changing engines or frames, does not leave room for doubt.

The bill is dismissed at the cost of the complainant.