## PORTABLE MACHINERY CO., Inc., v. ROBINS CONVEYING BELT CO.

District Court, D. New Jersey. June 13, 1929.

Andrew Foulds, Jr., of New York City, for plaintiff.

John R. Nolan, of New York City, for defendant.

RUNYON, District Judge. This is a suit for infringement of United States letters patent No. 1,376,125, issued to the plaintiff as assignee of Jere L. Wentz for improvements in "device for positioning apparatus and the like."

In the drawings and specifications of the patent there is shown a device for "elevating, lowering and adjustably positioning apparatus, vehicle bodies, machine parts and the like," the same being shown "applied to a wheeled vehicle."

The axle of the portable or wheeled ve-

hicle is mounted in two horizontal bearings from which project vertical guide sleeves, the bearings and sleeves being called in the specification "two way journal members." In each of the two sleeves is a slidable vertical rod, and these rods are connected at their lower ends by a cross-bar or rod, the three together forming a so-called U member. In figure 2 of the patent drawings, the top ends of the rods are shown attached to a structure labeled *13*, while in figure 1, at two points on the cross bar of the U-shaped member are fastened the ends of a chain or cable, "or other connecting medium," the same being secured to the axle "or like rotatable part of the fixed structure by means of a clamp 8 or in any suitable manner."

For the purposes of winding or unwinding the cable or chain, and thus raising or lowering the U-shaped member to any desired level, a wheel having radially projecting arms is fastened on the rotatable axle, and susceptible to manual manipulation.

Above the axle and slidably mounted on the vertical rods of the U-shaped member is a horizontal yoke-bar, and with the lowering and raising of the same the radial arms of the wheel are successively engaged or disengaged in order to prevent or to permit rotation of the axle and the consequent holding or moving of the superimposed structure to the desired level.

The inventor makes four claims with reference to his patent as follows:

Claim 1: The combination of

1. A rotatable axle,
2. Traction wheels thereon,
3. Adjustable supporting rods secured to the axle,
4. A connecting medium between the axle and the supporting rods, and
5. Means for winding the connecting medium on the axle to position the supporting rods.

Claim 2: The combination of

1. A supported structure,
2. A U-shaped supporting member secured thereto,
3. An axle,
4. Traction wheels thereon,
5. A connecting medium secured to the U-shaped member, and
6. Means for winding the said connecting medium on the axle to position the supported structure.

Claim 3: The combination of

1. A vertical U-shaped member,
2. Collars thereon,
3. A rotatable axle journaled in said collars,
4. A spider secured upon the axle,
5. A plurality of peripheral teeth on the spider adapted to be engaged by a lever to rotate the axle, and
6. A connecting medium between the U-shaped member and the axle and adapted to be wound on the axle to adjustably position the U-shaped member.

Claim 4: The combination of

1. An axle,
2. Traction wheels mounted thereon,
3. Journal members on the axle,
4. A supporting frame having uprights embraced by said journal members,
5. A cable secured to said supporting frame and adapted to be wound on said axle to position the supporting frame, and
6. Means for locking said axle.

The defendant company claims that the patent is invalid because

1. The alleged improvement described in the patent is a mere aggregation and not a patentable combination of elements.

2. The patent in suit is void for lack of invention in view of the prior state of the art.

While plaintiff has utilized its patent as forming a part of a portable conveyor apparatus, and argues that the inventor "was the first to conceive and place on the market a light, portable belt conveyor," claiming the while that the art involved relates to such portable belt conveyors, the patent itself is silent on the subject of conveyors of any sort, going no further than to describe as the inventor's aim and purpose the effecting of "new and useful Improvements in devices for Positioning Apparatus and the like, of which the following is a specification. My invention relates to improvements in devices for elevating, lowering and adjustably positioning apparatus, vehicle bodies, machine parts and the like, and the object of my invention is to provide a simple and convenient means for the said purpose."

In behalf of the patent's validity it is argued that it furnishes a combination of elements, all of which coact to produce a new and useful result and each dependent upon the others for the accomplishment of that result; further that the end sought to be attained is the adjustable positioning of the conveyor frame to the constantly receding location of the material to be moved and to the constantly advancing location of the accumulated material at the delivery end.

And in detailing the part played by each element, their contributions to successful operation are thus described by counsel:

"The traction wheels serve to shift the location of the machine horizontally to keep it within the zone of the material to be moved,

to support the device, and to provide a bearing for the rotatable axle or windlass; the rotatable axle forms a bearing for the traction wheels, carries the supporting U-shaped member, provides a windlass upon which the cable is wound, and supports the spider and locking means; the U-shaped support coacts with the traction wheels and axle to permit them to function. Thus, each of these elements performs its part in cooperative relation with the other elements to produce this new result, and each is dependent upon the others for the combined result."

At the hearing, Mr. Wentz, the inventor, testified that during the year 1915 he made and sold portable conveyors which were supplied with mechanism for raising and lowering a U-shaped frame structure; that such U-shaped frame structure was slidingly mounted in brackets; that the brackets were provided with collars or bearings for an axle; and that such axle was supported on wheels.

This showing embraces, so far as the elements therein recited are concerned, practically everything claimed in the patent in suit with the exception of the cable employed for raising and lowering the U-shaped structure and the means invoked for rotating the axle and thus winding or unwinding the cable fastened thereon, as well as means for locking said axle at any desired point, and, as such locking device is not used by defendant, it need command no further attention.

In fact, as in effect described by Mr. Wentz, the present invention consists entirely in the interposition of a cable between the axle and the lower cross-bar of the U-frame, in order that when the axle is rotated by means of a winch hoist, the cable is wound thereon and the U-frame raised or lowered.

In addition thereto is the axle-locking device above mentioned.

There is nothing in the specifications of this patent concerning its applicability or use in connection with portable belt conveyors, or to indicate it as being anything more than a device for positioning apparatus and the like.

There is one effect at least which results from this failure to confine the patent in question to conveyors, and that is a broadening of the field of the prior art. And a study of this field forces one to the conclusion that the patent in question shows nothing more than an adaptation of old and thoroughly known expedients, not for new or novel uses, but for functionings so common as to have required no more than ordinary mechanical skill to suggest their use.

Again, referring to Mr. Wentz's testimony, where he compares the two constructions, that of the conveyors which he made and sold more than two years prior to the application for the patent in suit, and that of the patent in suit, the difference consists in the interposition of a cable between the axle and the lower cross-bar of the U-frame and the employment of a winch to operate same.

In championing the various points of the patent in suit, plaintiff's counsel speaks as follows concerning the mounting of the axle in collars: "By making the axle rotatable in these collars, the inventor departed from the old art and produced a freely rotatable axle member capable of performing a triple function which was new in the art." * * *

Despite that statement, it seems plain that the prior Wentz machine as built and operated, and the original Wentz patent No. 1,275,808, utilized and published an axle mounted in collar bearings and therefore freely rotatable in the prior art applicable to portable conveyors, while the use of such an axle mounted on wheels had long since formed a part of the elevating and positioning art, and, as exemplified in the Wills patent No. 25,070, and the Hardy patent No. 609,541, had served a threefold functional purpose.

With further reference to Wills No. 25,070, objection is made to its invocation because of the use which it was introduced to serve, viz., the pulling of tree stumps. Nevertheless, this device describes a portable winch, largely similar in construction and operation to that of the patent in suit; a rotatable axle with wheels journaled thereon; a ratchet device for rotating the axle; and a cable designed to be wound on the axle for the purpose of raising and lowering a body to which the cable might be attached.

The adoption of a winch to perform the simple and time-honored function it has always done, involves no inventiveness, but rather mechanical expediency of ordinary, everyday calibre.

"As all parts of Latham's device were taken from the prior art, and as they perform in his device the same functions they performed in the devices from which they were taken, without developing any new functions, we are unable to find invention. If invention is wholly lacking, a patent cannot be sustained even for the specific combination of specifically contrived elements, which, apparently, is all the plaintiff is asking for." Motion Picture Patents Co. v. Calehuff Supply Co. (C. C. A.) 251 F. 598.

"There doubtless is merit in Turner's sys-

tem of concrete construction; it may be superior to other systems; but merit, and superiority even, may spring from a conception which does not involve invention. These qualities may come, as we think they do in these patents, from a careful assemblage of different elements from various sources and the clever combining of them. The union of the selected elements may be an improvement upon anything the art contains, but, if, in combining them, no novel idea is developed, there is no patentable invention, however great the improvement may be." Turner v. Lauter Piano Co. et al. (C. C. A.) 248 F. 930.

"The various elements shown in plaintiff's patent and mentioned in its respective claims are all found in the prior art, performing respectively the same function in the same way and producing the same result as in plaintiff's device. We are not unmindful that to combine old parts in such manner as to produce a new result by their harmonious cooperation may be patentable; but where the combination is not only of old parts, but obtains old results, without the addition of any new and distinct function, it is not patentable. There is no invention in merely selecting and assembling, as Burkholder did, the most desirable parts of different mechanisms in the same art, where each operates in the same way in the new device as it did in the old, and effects the same results [citing authorities]. It requires only the commonest kind of skill, such as any mechanic ordinarily skilled in the art could and would have exercised, to borrow, as the patentee did, from well-known styles of jack one or more of their operative parts and put the same into another, there to perform the same function as such respective parts performed in the first. The plaintiff's lifting-jack patent, for want of novelty and patentable invention, cannot be sustained." Elite Mfg. Co. v. Ashland Mfg. Co. (C. C. A.) 235 F. 893.

"It is not easy and perhaps not possible, to formulate a definition or test of a patentable combination of old elements, which will serve in all cases to distinguish it from a mere aggregation of the results of the several elements of which it is constituted. But it is safe to say that the effect produced by the combination must be new and useful, and not such as would suggest itself to the mind of an ordinarily intelligent person experienced in the art to which the supposed invention relates." L. A. Thompson Scenic R. Co. v. Chestnut Hill Casino Co. (C. C. A.) 127 F. 698.

Mr. Wentz undoubtedly evolved a smooth-working and effective machine, being, in part, the patent in suit. But in so doing, he drew generously on the prior art for the main body thereof, pressing into service in their virtual entirety the machine originally made and operated by him, and that of his own patent No. 1,275,808. And for the improvements to such prior art, which constitute the elements of the patent in suit, he added the cable attached to the U-shaped frame and wound around the axle, which cable so attached had long been an expedient for raising and lowering bodies to differing levels, and a winch with which to effect that purpose; likewise an old and recognized device, playing no new part.

I am, therefore, convinced that the claims of the patent in suit are each for an aggregation of old elements and not for a patentable combination, and that in view of the prior state of the art, the patent in suit is invalid for lack of invention.

The bill of complaint will therefore be dismissed, with costs.